SEAMAN BODY CORPORATION, Plaintiff and Respondent, vs. INDUSTRIAL COMMISSION OF WISCONSIN and others, Defendants, CHARLES ABRESCH & COMPANY and another, Defendants and Appellants.

*February 11—March 10, 1931.*

For the appellants there was a brief by *Quarles, Spence & Quarles*, attorneys, and *Arthur B. Doe* of counsel, all of Milwaukee, and oral argument by *Mr. Doe*.

For the respondent Seaman Body Corporation there was a brief by *Fawsett & Shea* of Milwaukee, and oral argument by *Edmund B. Shea*.

For the Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general.

NELSON, J. No question is raised as to the right of Tiskewicz to compensation in the sum found by the commission. The only question involved in this appeal is whether compensation for Tiskewicz's injuries shall be paid by Seaman Body Corporation or by Charles Abresch & Company,—the question of responsibility depending on which of the two companies was the employer of the injured man at the time of the accident. The commission found that, at the time of the injury, the applicant "was not an employee of Charles Abresch & Company" but was "in the employ of the Seaman Body Corporation," and made an award against the latter company but without filing specific findings of fact on the subject. The circuit court held that the very general findings of the commission were merely conclusions of law within the definition thereof

stated in *Tesch v. Industrial Comm.* 200 Wis. 616, 229 N. W. 194, and as conclusions of law were erroneous upon the undisputed testimony. The court therefore remanded the action with directions to enter the award against the Abresch Company instead of against Seaman Body Corporation. This is claimed to be error.

The material facts are not in dispute. Seaman Body Corporation was engaged at Milwaukee in manufacturing automobile bodies. Charles Abresch & Company operated a woodworking plant at Milwaukee. On February 15, 1929, the Abresch Company contracted to manufacture and sell to Seaman Body Corporation a quantity of wooden automobile body parts known as "arm rests," to be delivered as ordered by the plaintiff from day to day or week to week. On February 21st, the day before applicant was injured, one Callendar, who was the Abresch Company manager, telephoned Bauman, superintendent of the Seaman Body Corporation, that on account of an accident in its plant the Abresch Company was short of men and needed help in order to turn out the number of arm rests required for delivery under its contract, and requested Bauman to send one or two "shaper hands" to help out for three or four days until they could be replaced by other men. Bauman told Callendar he would send two men as soon as possible, and he immediately thereafter instructed his assistant, Hetzel, to send two men to the Abresch plant so as to help out that company in keeping up with its schedule of arm-rest deliveries. Hetzel then went to Tiskewicz, explained the emergency which had arisen in the Abresch Company plant, and said he wanted Tiskewicz to go down to the Abresch Company and help it out, to which Tiskewicz said "all right," that he would go. Before leaving the Seaman plant Tiskewicz asked Hetzel who was to pay him for his work at the Abresch Company, and Hetzel told him that he would be paid right along the same as he was being paid by the

Seaman Company. Hetzel then told Gonia, another Seaman employee, that he wanted him to go also to the Abresch plant. Gonia said it would be all right if he got the same wages he was then earning at the Seaman plant, which earnings were ninety cents an hour. Hetzel agreed to these terms and Hetzel, Tiskewicz, and Gonia left the Seaman plant about three o'clock and went to the Abresch Company's plant. On arrival there they were received by one Graboske, who was the acting foreman of the woodworking department. Graboske had been instructed by Callendar to expect two "shaper hands" sent by Bauman and to put them to work on arm rests. Graboske showed Tiskewicz and Gonia the machine on which they were to work, helped them find the necessary forms and equipment for the operation which he told them to perform, and showed them where to get the wood materials to be put through the machine. Tiskewicz and Gonia complied with these instructions and proceeded to turn out arm rests. Graboske later put them to work on a different machine, at which Tiskewicz continued to work until he was injured on the following day. During that time Tiskewicz ran various operations required for the production of arm rests. Graboske watched the work of Tiskewicz and Gonia, inspected, measured, and commented from time to time on the results which they were producing, told them how many units they were to run through the machines, and at intervals directed them to change from one operation to another. Throughout all of the time that Tiskewicz worked at the Abresch Company on February 21st and 22d he received no orders, instructions, or directions of any kind from any person except Graboske. During that time no representative of Seaman Body Corporation exercised the slightest measure of authority or control over him or over the selection or performance of his work. The machine on which Tiskewicz was injured was in fact the property of Seaman Body Corporation, which

machine had been loaned some months before to the Abresch Company as an accommodation in connection with the work on which the Abresch Company had been engaged. There was no charge of any kind for the use of the machine and no agreement or restriction as to its use, and it was subject to removal at any time by Seaman Body Corporation without notice. The presence of this machine in the Abresch Company plant at the time of the accident had no connection with the arm-rest contract or with the services of Tiskewicz and Gonia. Both of these men first worked on a machine which belonged to the Abresch Company. The reason that Tiskewicz was operating the particular machine in question at the time of the accident was because Graboske had directed him to work on that machine. In making up the pay-roll on the day following the accident, the Seaman Body Corporation's pay-roll clerk obtained from Gonia the number of hours worked by him and Tiskewicz at the Abresch Company plant. The time thus obtained, forty-five and a half hours, was entered at the rate of ninety cents per hour on the pay-roll of Seaman Body Corporation in the aggregate amount of $40.95 and the full amount of this sum was included in the checks issued to Tiskewicz and Gonia. Tiskewicz received $9.90 of the amount and Gonia received $31.05, the latter having continued to work at the Abresch plant for several days after the accident. Seaman Body Corporation thereafter sent the Abresch Company a debit memorandum charging the latter company with $40.95 on account of the labor of Tiskewicz and Gonia, which charge was accepted and allowed by the Abresch Company. Thereby the Seaman Body Corporation was reimbursed in the exact amount paid by Tiskewicz and Gonia for their labor at the Abresch plant, so that their wages for that work were in fact paid and borne by the Abresch Company. There was no express agreement of any kind between Seaman Body Corporation and the Abresch Company prior to

the accident as to the amount, rate, or method of payment of wages to Tiskewicz and Gonia for work at the Abresch plant, nor was there any express agreement on that point between these men and the Abresch Company. The Abresch Company expected to pay the Seaman Body Corporation for these men. On at least one prior occasion men from the Seaman Body Corporation had worked for the Abresch Company, and the Abresch Company had taken care of the time and paid the Seaman Body Corporation the amount of wages earned by the men while they worked at the Abresch Company. On previous occasions when the Abresch Company got a bill from the Seaman Body Corporation for the men's time, the Abresch Company paid the scale of the Seaman Body Corporation's wages.

It is clear that Tiskewicz, at the time of his injury, was in the employ of either Seaman Body Corporation or Charles Abresch & Company. Each company denies that Tiskewicz was its employee at the time of injury and contends that he was the employee of the other.

The material facts relating to this controversy are not in dispute so it is not difficult to apply to this dispute what we believe to be the correct controlling legal principles. In the view we take of this controversy we think it is clearly ruled by at least two cases heretofore decided by this court. *Cayll v. Waukesha G. & E. Co.* 172 Wis. 554, 179 N. W. 771; *Spodick v. Nash Motors Co.* 203 Wis. 211, 232 N. W. 870. The *Cayll Case* is the leading Wisconsin authority dealing with the liability of special employers to compensate loaned employees for injuries. The rules of law governing such liability, laid down by this court in the *Cayll Case,* have not been disapproved or consciously or intentionally departed from, as appears from a reading of *Powell v. Industrial Comm.* 193 Wis. 38, 213 N. W. 651, and *Visiting Nurse Asso. v. Industrial Comm.* 195 Wis. 159, 217 N. W. 646, in which cases the *Cayll Case* was referred to and specifically

distinguished. In the case of *Spodick v. Nash Motors Co.,* recently decided (203 Wis. 211, 232 N. W. 870), the law of the *Cayll Case* was unquestionably followed.

The legal principles established by the *Cayll* and *Spodick Cases* may be briefly stated as follows: The relation of employer and employee exists as between a special employer to whom an employee is loaned whenever the following facts concur: (a) Consent on the part of the employee to work for a special employer; (b) Actual entry by the employee upon the work of and for the special employer pursuant to an express or implied contract so to do; (c) Power of the special employer to control the details of the work to be performed and to determine how the work shall be done and whether it shall stop or continue.

The vital questions in controversies of this kind are: (1) Did the employee actually or impliedly consent to work for a special employer? (2) Whose was the work he was performing at the time of injury? (3) Whose was the right to control the details of the work being performed? (4) For whose benefit primarily was the work being done?

Applying the principles of law established by the *Cayll* and *Spodick Cases* to the undisputed facts of this case, we entertain no doubt that Tiskewicz, at the time of his injury, was an employee of the Abresch Company loaned to it by Seaman Body Corporation, and that the Abresch Company is legally and justly bound to compensate him for his injury. The rule of law established by the cases just referred to, and now specifically approved, rests upon considerations of fairness and justice. Under it the burden to compensate is placed upon the special employer whose work is being performed and upon the industry in which the employee is engaged and which is being primarily promoted. Appellants' contention that the *Cayll Case* has been impliedly overruled by the following cases: *Powell v. Industrial Comm.* 193 Wis. 38, 213 N. W. 651; *Visiting Nurse Asso.*

*v. Industrial Comm.* 195 Wis. 159, 217 N. W. 646; *Heal v. Industrial Comm.* 197 Wis. 95, 221 N. W. 389, and *Hardware Mut. Cas. Co. v. Industrial Comm.* 197 Wis. 156, 221 N. W. 649, is not well founded. Each of the cases cited dealt with a situation quite unlike the situation in the *Cayll Case,* and the claim that the *Cayll Case* has been over-ruled, modified, or departed from is not supported or justified by the decisions cited. In the *Powell Case* the vital question considered by the court was whether Debroux, at the time of the injury, was performing farm labor. The *Cayll Case* was considered and distinguished. The court held that Debroux continued in the employ of Powell and that services performed by Debroux for a neighbor were performed primarily for the benefit of Powell in order that he might later on receive assistance from Roberts, his neighbor, in baling hay. The court further held that the work done upon the premises of Roberts was farm labor performed in the manner in which it is usually and ordinarily performed. The custom of exchanging farm work which generally prevails in farming communities appears to have influenced the court in coming to the conclusions reached. In *Visiting Nurse Asso. v. Industrial Comm., supra,* this court again distinguished that case from the situation present in the *Cayll Case.* In that case the court held that the arrangement between the Visiting Nurse Association and the Gridley Dairy Company was not for the loan of a nurse, but rather a contract whereby the association undertook to furnish nursing services to Gridley Dairy Company for a profit. In *Heal v. Industrial Comm., supra,* one Adams was employed by Heal, a road contractor, to drive a tractor. Adams was sent by his employer to drive a tractor belonging to Heal and to plow a small field. Adams was injured, and it was held that he was entitled to recover compensation from his employer, Heal, for the injuries sustained while plowing the field. It does not appear

from the report of the case that Adams was a "loaned employee" at the time of injury. It rather appears that the work of operating the tractor was, under all the circumstances, the work of Heal.

In *Hardware Mut. Cas. Co. v. Industrial Comm., supra,* the evidence was not discussed in detail, the court holding that the conclusion of the court below—that there was no such complete temporary surrender by the general employer of its employee, to the temporary employer, as would require it to be said, as a matter of law, that the former relationship of employer and employee was for the moment severed and a new one created—was correct.

We see nothing in the case just discussed which changes the rule laid down in the *Cayll Case.*

But one other question requires attention. The circuit court, following the opinion in *Tesch v. Industrial Comm.* 200 Wis. 616, 229 N. W. 194, held that the commission had failed to make specific findings of fact as contemplated by the statute; that the so-called finding of fact, that Tiskewicz "was not an employee of Charles Abresch & Company; that on said date, while in the employ of the respondent, Seaman Body Corporation," etc., was not a finding of fact but was in reality a mere conclusion of law. While it is not always easy to determine whether a given finding is a finding of fact or a conclusion of law (*Weyauwega v. Industrial Comm.* 180 Wis. 168, 192 N. W. 452; *Tesch v. Industrial Comm.* 200 Wis. 616, 229 N. W. 194), it seems clear that the law of the *Tesch Case,* where the matter was given full and careful consideration, is applicable here.

The conclusion of the Industrial Commission that the Abresch Company was not the employer of Tiskewicz at the time of the injury, within the meaning of the workmen's compensation act, is merely its decision—its conclusion of law. A mere finding that a company is not the

employer of another, when considered in a controversy of this kind, involving a loaned employee, the correct solution of which is so clearly dependent upon specific findings of fact at least as to the several elements or tests which determine the relationship of a loaned employee to his respective general or special employer, must be considered nothing more than a conclusion of law and not binding on the court. *Tesch v. Industrial Comm., supra.* The commission made no specific findings as to the several material and important facts which, in controversies of this kind, are so necessary in order that the established law may be correctly applied and the controversy justly determined. In justice to the commission, however, it must be stated that this matter was heard and decided by it long prior to the decision in *Tesch v. Industrial Comm., supra,* in which the rather imperative duty of the commission to make specific findings of fact in contested matters is suggested. There is no need to repeat what was so fully stated in the *Tesch Case.*

*By the Court.*—Judgment affirmed.