Randy GANSCH, Plaintiff-Respondent,

v.

NEKOOSA PAPERS, INC., a Wisconsin corporation and Sentry Insurance, a mutual company, a Wisconsin corporation, Defendants-Appellants-Petitioners,

HERITAGE MUTUAL INSURANCE COMPANY, Intervenor.

Supreme Court

*No. 88-1190. Argued October 4, 1990.—Decided December 13, 1990.*

(Also reported in 463 N.W.2d 682.)

For the defendants-appellants-petitioners there was a brief by *Russell T. Golla* and *Anderson, Shannon, O'Brien, Rice & Bertz,* Stevens Point and oral argument by *Mr. Golla.*

For the plaintiff-respondent there was oral argument by *Jerome A. Maeder* and *Jerome A. Maeder, S.C.,* Wausau.

For the intervenor there was a brief by *David A. Piehler* and *Terwilliger, Wakeen, Piehler & Conway, S.C.,* Wausau.

SHIRLEY S. ABRAHAMSON, J. This is a review of a published decision of the court of appeals, *Gansch v. Nekoosa Papers, Inc.,* 152 Wis. 2d 666, 449 N.W.2d 307 (Ct. App. 1989), affirming a judgment of the circuit court for Wood county, Dennis D. Conway, Circuit Judge, awarding damages to plaintiff Randy Gansch against Nekoosa Papers for personal injury.

The issue is whether the exclusive remedy provision of the Worker's Compensation Act bars the plaintiff from recovering damages in a tort action against Nekoosa Papers because he is either an employee of Nekoosa Papers[1] or an employee of a temporary help agency under secs. 102.01(2)(f) and 102.29(6), Stats.

[1]Previous cases on this subject attempt to determine whether the relation of employee and employer exists between an employee who is loaned (referred to in the cases as a loaned or special employee) and the employer (referred to in the cases as the borrowing employer, special employer or temporary employer) to whom the employee is loaned. The nature of the relation between the loaned employee and the borrowing employer determines their rights and liabilities.

The relation of the loaned employee to the borrowing employer has ordinarily arisen in three types of cases. In one type of case, the question is whether the borrowing employer is liable for paying worker's compensation for the loaned employee. See, *e.g., Boehck Equip. Co. v. Industrial Comm.,* 246 Wis. 178, 16 N.W.2d 298 (1944); *Cayll v. Waukesha Gas & Elec. Co.,* 172 Wis. 554, 179 N.W. 771 (1920).

A second type of case raises the question of the tort liability of the lending employer to third persons injured by the acts of a loaned employee. See, *e.g., DePratt v. Sergio,* 102 Wis. 2d 141, 306 N.W.2d 62 (1981); *Huckstorf v. Vince L. Schneider Enterprises,* 41 Wis. 2d 45, 163 N.W.2d 190 (1968); *Skornia v. Highway Pavers, Inc.,* 39 Wis. 2d 293, 159 N.W.2d 76 (1968); *Edwards v. Cutler-Hammer, Inc.,* 272 Wis. 54, 74 N.W.2d 606 (1956).

A third type of case, that of the case at bar, raises the question whether an injured loaned employee may maintain a tort action against the borrowing employer for personal injury incurred on the job. See, *e.g., Meka v. Falk Corp,* 102 Wis. 2d 148, 306 N.W.2d 65 (1981); *Spodick v. Nash,* 203 Wis. 211, 232 N.W. 870 (1931).

For commentary on the borrowed servant rule, see sources cited in *DePratt v. Sergio,* 102 Wis. 2d 141 at 144, n.6, 306 N.W.2d 62 (1981).

1985–86. We hold that Nekoosa Papers controlled the plaintiff's work activities, that the plaintiff was an employee of a temporary help agency under sec. 102.01(2)(f), and that sec. 102.29(6), Stats. 1985–86, bars the plaintiff from maintaining an action in tort against Nekoosa Papers. We therefore remand the cause with directions to the circuit court to dismiss the action.

The plaintiff was employed by Midway Transport Corporation, a wholly owned subsidiary of Bassuener Construction, Inc., a highway contractor.

Bassuener and Nekoosa Papers entered into an agreement whereby Bassuener leased a bulldozer to Nekoosa Papers, while Nekoosa Papers' bulldozer was being repaired. The plaintiff would operate the Bassuener bulldozer at Nekoosa Papers. His primary responsibilities at Nekoosa Papers would be to disk and pile lime.

On June 20, 1986, Nekoosa Papers' bulldozer was returned to the job site following repairs. The plaintiff, who had been working at Nekoosa Papers for ten days, was helping unload the repaired bulldozer and sustained injury when the bulldozer blade fell on his foot.

Following his injury, the plaintiff filed a worker's compensation claim against Bassuener and initiated a tort action against Nekoosa Papers. The plaintiff's claim against Nekoosa Papers was based on sec. 102.29(1), Stats. 1985–86, which expressly provides that the making of a claim for worker's compensation does not affect the employee's right to sue any other entity for injury. Section 102.29(1) states:

> The making of a claim for compensation against an employer or compensation insurer for the injury . . . of an employe shall not affect the right of the employe . . . to make claim or maintain an action in tort against any other party for such injury.

Nekoosa Papers asserted in the circuit court, in the court of appeals, and in this court that the plaintiff was its employee and that the exclusive remedy provision of the Worker's Compensation Act bars the plaintiff from maintaining a tort action against Nekoosa Papers.[2]

At the close of the evidence and upon the plaintiff's motion, the circuit court granted a directed verdict, holding as a matter of law that the plaintiff was not an employee of Nekoosa Papers.[3] The jury decided only the issues of negligence and damages.

The court of appeals, like the circuit court, ruled in the plaintiff's favor, holding that the plaintiff was not an employee of Nekoosa Papers and was not precluded by the Worker's Compensation Act from bringing an action in tort against Nekoosa Papers. Judge Robert D. Sundby of the court of appeals dissented, concluding that the plaintiff was an employee of a temporary help agency (Bassuener) under sec. 102.01(2)(f) and that sec.

---

[2]Section 102.03(2), Stats. 1985–86, provides that the employee's right to recover worker's compensation benefits shall be the employee's exclusive remedy against the employer. Section 102.03(2) states in pertinent part: "Where such conditions exist the right to the recovery of compensation under this chapter shall be the exclusive remedy against the employer, any other employe of the same employer and the worker's compensation insurance carrier."

[3]The only reference to loaned employees in the 1985–86 Worker's Compensation Act is in sec. 102.06, Stats. which provides as follows:

Section 102.06. **Joint liability of employer and contractor; loaned employes.** . . . an employer shall also be liable for compensation to an employe who has been *loaned* by the employer to another employer. The employer who becomes liable for and pays such compensation may recover the same from such contractor, subcontractor or other employer for whom the employe was working at the time of the injury . . . .. (Emphasis added.)

102.29(6) barred him from maintaining an action in tort against Nekoosa Papers. While neither party raised or argued the applicability of the statutory provisions governing temporary help agencies to this case in the circuit court or court of appeals, the parties addressed that issue here.

The statutory provisions governing temporary help agencies were added to the Worker's Compensation Act, secs. 102.01(2)(f) and 102.29(6), in 1981. Section 102.29(6), Stats. 1985-86, provides: "No employe of a temporary help agency who makes a claim for compensation may make a claim or maintain an action in tort against any employer who compensates the temporary help agency for the employe's services."[4] Section 102.01(2)(f) defines "temporary help agency" as "an employer who places its employe with another employer who controls the employe's work activities and compensates the first employer for the employe's services."

The plaintiff argues that the temporary help agency provisions do not govern this case. He urges that only employers "in the business" of placing temporary help, for example, Manpower, Inc., or Kelly Services, fall within the statutory term. He explains that Bassuener is not in the business of placing temporary help but rather is a general contractor in the business of bidding on highway construction jobs; its equipment rental is an incidental part of its business and its employees go to the job to operate the equipment.

We are not persuaded by the plaintiff's argument that a temporary help agency is limited under the stat-

---

[4]The plaintiff in this case filed a worker's compensation claim. We need not determine in this case the relation between the phrase "who makes a claim for compensation" in sec. 102.29(6) and the exclusive remedy language in sec. 102.03(2), set forth in note 2 above.

utes to an employer who is in the business of placing its employees with another employer.[5] The language of the statute militates against this conclusion. Section 102.01(2)(f) does not state that a temporary help agency refers only to an employer in the business of placing its employees with another employer. The plaintiff's construction adds words to the statute.

Further, the legislative history does not reveal a legislative intent to limit temporary help agencies to employers "in the business" of placing temporary help. The provisions relating to temporary help agencies were recommended by the Worker's Compensation Advisory Council, which is required to submit to the Department of Industry, Labor and Human Relations a list of recommendations for changes in the worker's compensation laws during each regular session of the legislature. Section 102.14(2), Stats. 1985–86. The Legislative Attorney of the Legislative Reference Bureau pointed out to the Advisory Council that the definition of temporary help agency is not limited to an employer in the business of

---

[5] A line of cases involving entities in the business of furnishing employees is referred to as the "labor broker" cases. See *Danek v. Meldrum Mfg. & Engineering Co.*, 312 Minn. 404, 252 N.W.2d 255 (1977), in which the loaned employee sued the borrowing employer in tort. The Minnesota court considered the "loaned servant doctrine" as it applied to "that subclass of general employers known as labor brokers, who supply temporary workers to special employers." *Id.* at 258. The court focused on the issue of consent. Citing cases from other jurisdictions, the court held that as a matter of law the plaintiff had consented to work for the borrowing employer, that she was an employee both of the labor broker and the borrowing employer, and that her tort suit against the borrowing employer was barred. We declined to adopt the *Danek* labor-broker rule as a matter of law in the *Meka* case. See *Meka v. Falk Corp.*, 102 Wis. 2d 148, 158 n.13, 306 N.W.2d 65 (1981).

placing employees with other employers. The Legislative Attorney suggested, therefore, that perhaps the definition was too broad.[6] Despite this admonition, the Advisory Council did not suggest a change in the draft of the legislation, and the legislature adopted the broad definition of temporary help agency.

The temporary help agency amendments were enacted in 1981, following this court's decision in *Meka v. Falk Corp.,* 102 Wis. 2d 148, 306 N.W.2d 65 (1981), in which the court once again criticized the four-part loaned employee test the court had developed fifty years earlier in *Seaman Body Corp. v. Industrial Comm.,* 204 Wis. 157, 163, 235 N.W. 433 (1931). The four-part *Seaman* test has been used to determine whether a borrowing employer and loaned employee have an employer-employee relation so that the loaned employee may not maintain a tort action against the borrowing employer. Under the *Seaman* test the "vital questions" are: (1) Did the employee actually or impliedly consent to work for the borrowing employer?[7] (2) Whose work was the employee performing at the time of injury? (3) Who had the right to control the details of the work being performed? (4) For whose benefit primarily was the work being done?

The *Seaman* four-part fact-oriented test has proven problematic. More than once this court has expressed

---

[6]Limprecht Memorandum. October 15, 1981, Legislative Reference Bureau Drafting Record, ch. 92, Laws of 1981.

[7]The principal issue at the circuit court was whether the plaintiff actually or impliedly consented to work for Nekoosa Papers. The circuit court looked at the standard annual agreement and purchase order between Bassuener and Nekoosa Papers and found that the plaintiff had not consented to work for Nekoosa Papers. The circuit court therefore concluded that Nekoosa Papers was not the plaintiff's employer.

dissatisfaction with the test, declaring that "this court, as well as others, has found the question of the 'loaned employee' troublesome. The definition and factual essentials necessary to establish the legal relationship of the loaned employee are not uniform in all the reported cases, nor is the same emphasis always to the necessary elements" and that "when applied to specific factual situations, the distinctions are sometimes slight and the decisions well-nigh irreconcilable." *Meka v. Falk Corp.*, 102 Wis. 2d 148, 158, n.13, 306 N.W.2d 65 (1981), quoting *Freeman v. Krause Milling Co.*, 43 Wis. 2d 392, 394, 168 N.W.2d 599 (1969).[8]

The *Seaman* test was unsatisfactory because its requirements were too manipulable, allowing litigation to flourish as employers, employees, and the courts have expended time and resources on suits turning on the loaned employee issue.

We perceive the statutory provisions on temporary help agencies, secs. 102.29(6) and 102.01(2)(f), as a legislative response to *Meka* and the prior cases that point out the inadequacies of the four-part *Seaman* test.[9] The Advisory Council and legislature apparently sought to

---

[8]The circuit court in this case remarked on the difficulties of applying the *Seaman* four-part test, stating: "When those tests are applied to specific situations, they result in distinctions which are sometimes slight and in decisions which are irreconcilable. This is the Wisconsin Supreme Court speaking of its own decisions which causes something of a problem to a trial court . . . .. I wish that the Supreme Court would adopt the Minnesota rule or any other rule that would help the trial court benefit in cases of this variety . . .."

[9]*See, e.g., DePratt v. Sergio*, 102 Wis. 2d 141, 145–47, 306 N.W.2d 62 (1981); *Freeman v. Krause Milling Co.*, 43 Wis. 2d 392, 394, 168 N.W.2d 599 (1969); *Huckstorf v. Vince L. Schneider Enterprises*, 41 Wis. 2d 45, 49, 163 N.W. 190 (1968); *Skornia v. Highway Pavers, Inc.*, 39 Wis. 2d 293, 302, 159 N.W.2d 76 (1968).

simplify the determination of whether a temporary employee injured in the workplace may maintain a tort action against the temporary employer.

With this in mind, we turn to the statutory provisions on temporary help agencies and their application to this case.

■

In order for Nekoosa Papers to be immune from tort liability under sec. 102.29(6), Stats. 1985–86, Bassuener must constitute a "temporary help agency" under sec. 102.01(2)(f). Section 102.01(2)(f) defines a temporary help agency as having the following characteristics: an employer who places its employee with another employer who controls the employee's work activities and compensates the first employer for the employee's services. This definition differs from the four-part judicially crafted test set forth above.[10]

Bassuener is an employer who placed its employee, the plaintiff, with another employer, Nekoosa Papers. Nekoosa Papers compensated Bassuener for the plaintiff's services. The only element of the statutory definition in issue in this case is the element of control.

The statutory formulation of the control requirement differs from the *Seaman* formulation of the control component. *Seaman* provided that for the borrowing employer to become the loaned employee's employer the borrowing employer must have "the right to control the details of the work being performed." 204 Wis. at 163.[11]

---

[10]The legislature eliminated three troublesome components of the *Seaman* test. Under the statute the court no longer has to determine whether the employee consented to work for the borrowing employer, whose work the employee was performing at the time of injury or for whose benefit primarily the work was being done.

[11]The issue of control has been the source of controversy in

The statute merely requires that the temporary employer "control the work activities" of the temporary employee. The control requirement for the temporary employer appears to be less stringent in the statute than in the *Seaman* test. The statute does not require the temporary employer to control or have the right to control the details of the work being performed. Under the statutory language the temporary employer need not have exclusive control over the temporary employee's work. Under the statutory formulation of the control requirement, the temporary employer need only control the work activities of the temporary employee.

█ The facts about the plaintiff's work activities and reasonable inferences from the facts are not in dispute in this case. The application of undisputed facts and undisputed inferences from the facts to the judicially crafted four-part *Seaman* test to determine the relation between the loaned employee and the borrowing employer has traditionally been viewed by this court as one of law for the court. *Cayll v. Waukesha,* 172 Wis. 554, 560, 179 N.W. 771 (1920); *Huckstorf v. Vince L. Schneider*

---

many loaned employee cases. "Much of the case law on the subject of a 'borrowed employee' has developed from those cases involving the hiring or lending of a team and carriage with driver, automobile and chauffeur, truck and driver, and heavy equipment, such as a crane, and operator." *Edwards v. Cutler-Hammer,* 272 Wis. 54, 57, 74 N.W.2d 606 (1956). Parties sometimes referred to these cases as "carriage" and "crane" cases. See, *e.g., DePratt v. Sergio,* 102 Wis. 2d 141, 145–47, 306 N.W.2d 62 (1981); *Huckstorf v. Vince L. Schneider Enterprises,* 41 Wis. 2d 45, 49, 163 N.W. 190 (1968); *Skornia v. Highway Pavers, Inc.,* 39 Wis. 2d 293, 302, 159 N.W.2d 76 (1968); *Hoefer v. Last,* 221 Wis. 102, 266 N.W. 196 (1936); *Wagner v. Larsen,* 174 Wis. 26, 182 N.W. 336 (1921).

*Enterprises,* 41 Wis. 2d 45, 49, 163 N.W.2d 190 (1968); *Seaman Body Corp. v. Industrial Commn,* 204 Wis. 157, 162, 253 N.W. 433 (1931). The application of undisputed facts and undisputed inferences from the facts to the statutory test of control is similarly a question of law for the court.

We therefore examine the facts in the record relevant to the issue of control. Bassuener hired the plaintiff, controlled his job placement, and had the sole power to terminate the plaintiff's employment. Bassuener charged Nekoosa Papers for plaintiff's services as an operator. Midway Transport, a wholly owned subsidiary of Bassuener, paid the plaintiff's wages and withheld taxes and social security.

Bassuener did not directly supervise the plaintiff's work. Bassuener told the plaintiff to follow Nekoosa Papers' instructions. Darryl Bassuener testified that he believed Nekoosa Papers directed the plaintiff's work but that he drove through the area two or three times a day to check on the plaintiff. He stated that he had the right to make sure that the plaintiff got the job done.

The plaintiff reported to Nekoosa Papers' foreman each morning and Nekoosa Papers' foreman instructed the plaintiff about his duties each day. According to the plaintiff, Nekoosa Papers gave him general directions about whether to disk or pile lime and where to perform these tasks. The plaintiff had not previously had a job where he was required to disk and pile lime. The plaintiff asserts that as a skilled bulldozer operator, he was in charge of all the details of his work. While the plaintiff was in charge of checking the oil, water and fuel in the bulldozer each day, the plaintiff was not in charge of maintaining the bulldozer. At the time of the injury Nekoosa Papers did not request that the plaintiff help in

unloading its repaired bulldozer; the plaintiff acted on his own without specific instructions.

The circuit court found that the plaintiff submitted to Nekoosa Papers' control and that Nekoosa Papers controlled most of the details of the plaintiff's work. The circuit court viewed the details as minimal "because all the men at Nekoosa would do would be to go out there and show him how to push this lime around that he would do for ten days . . .."

On the basis of these facts and the findings of the circuit court, we conclude that Nekoosa Papers' supervision of the plaintiff in this case was sufficient to constitute control of the plaintiff's work activities under sec. 102.29(6), Stats. 1985–86.

For the reasons set forth, we reverse the decision of the court of appeals and remand the cause to the circuit court with directions to dismiss the action.

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded to the circuit court with directions.