Richard BAUERNFEIND, Plaintiff-Appellant,

v.

Roger ZELL and James Coleman, d/b/a Coleman-Zell Construction and State Farm Fire & Casualty Company, Defendants-Respondents,

The TRAVELERS COMPANY, Subrogated Party.

Supreme Court

*No. 92–1812. Oral argument January 24, 1995.—Decided March 8, 1995.*

(Also reported in 528 N.W.2d 1.)

702

704

For the plaintiff-appellant there were briefs by *James G. Schernecker* and *Action Law, S.C.,* Madison and oral argument by *James G. Schernecker.*

For the defendants-respondents there was a brief by *Kenneth T. McCormick, Jr.* and *Boardman, Suhr, Curry & Field,* Madison and oral argument by *James E. Bartzen.*

STEINMETZ, J.   There are two issues in this case. The first issue is whether the plaintiff's claim is controlled by sec. 102.29(6), Stats., or by the four-prong "loaned employee" test originally set forth in *Seaman Body Corporation v. Industrial Comm.,* 204 Wis. 157, 163, 235 N.W. 433 (1931). Because the plaintiff is not an employee of a "temporary help agency" within the meaning of sec. 102.29(6), we hold that his claim is controlled by the "loaned employee" test originally set forth in *Seaman.* The second issue is whether the plaintiff was a "loaned employee" of the defendant, Coleman-Zell Construction, when he was injured. Applying the *Seaman* test, we hold as a matter of law that the plaintiff was a loaned employee of Coleman-Zell when he was injured and, therefore, his claim is barred by the exclusive remedy rule of the Worker's Compensation Act, sec. 102.03(2).[1]

The relevant facts are undisputed. The plaintiff, Richard Bauernfeind, began working for the Penda Corporation (Penda) in 1986. He was injured while working on Penda's premises on March 17, 1988.

Prior to March 17, 1988, Penda and Jessup Associates entered into a contract, whereby Jessup Associates agreed to perform certain construction work for Penda, including the installation of industrial storage racking in Penda's warehouse. Jessup Associates subsequently subcontracted with Coleman-Zell Construction (Coleman-Zell) to install the storage racking. At that time, Tom Jessup, the president of Jessup Associates, informed Coleman-Zell that if it needed

---

[1] Section 102.03(2), Stats., provides in pertinent part: "Where such conditions exist the right to recovery of compensation under this chapter shall be the exclusive remedy against the employer, any other employe of the same employer and the worker's compensation insurance carrier."

additional manpower during the installation, Penda would make some of its employees available.

Coleman-Zell is a construction business owned by partners Roger Zell and Jim Coleman. Zell supervised the Coleman-Zell construction crew that worked at Penda's warehouse. On March 17, 1988, Zell asked a Penda foreman to provide some laborers to help move materials from the loading dock to the place in the warehouse where the racking was to be erected. Zell testified that the Penda foreman responded by saying that he would get some people and that Zell should tell them what he wanted them to do.

In response to Zell's request, Bauernfeind's supervisor at Penda, Michael Sweeney, instructed Bauernfeind to go to the warehouse and work for Zell. Bauernfeind went to the warehouse and proceeded to work under the supervision of Zell, who was "running the floor" and telling the people involved in installing the racking system what they should do and how they should do it.

A forklift was used to move bundles of racking from the loading dock to the place where the racking was to be assembled. Each bundle of racking was held together with banding. Zell instructed Bauernfeind to cut and remove this banding.[2] At the time of the accident, Bauernfeind was standing in front of a bundle of racking that was elevated from the floor on the tines of the forklift. Bauernfeind began to cut and remove the banding. Shortly thereafter, Zell directed another

[2] In his brief, Bauernfeind argues that Zell never gave him any specific instructions. However, in his deposition, Bauernfeind testified as follows: "Mr. Zell instructed me to snap the bandings because I was the only one there not holding onto the bundle, and so I took the tin snips . . . and proceeded to cut the bands and pull the bands from out under the bundle."

employee on the floor to "let it down." The forklift operator mistakenly believed that this command was directed at him. Consequently, he lowered the tines of the forklift. Some of the racking components fell off the ends of the tines and struck Bauernfeind's leg, causing serious injuries. As a result of these injuries, Bauernfeind received worker's compensation benefits from Penda's insurance carrier, The Travelers Company, which is a subrogated party to this action.

Bauernfeind worked under Zell's direction for two hours and 20 minutes before he was injured. Penda paid Bauernfeind for the time he spent assisting Coleman-Zell. Coleman-Zell did not compensate Penda for Bauernfeind's services. Nor did Coleman-Zell pay Bauernfeind for his services.

Bauernfeind commenced a negligence action against Coleman-Zell. Both parties subsequently moved for summary judgment. Coleman-Zell argued that Bauernfeind's claim was barred by the exclusive remedy rule of the Worker's Compensation Act because he was a loaned employee of Coleman-Zell. Conversely, Bauernfeind argued that he was not a loaned employee of Coleman-Zell. The circuit court for Columbia county, the Honorable Lewis W. Charles, granted Coleman-Zell's motion for summary judgment. Applying the "loaned employee" test originally set forth in *Seaman,* the circuit court found (1) that Bauernfeind consented to work for Coleman-Zell; (2) that Bauernfeind was performing work for Coleman-Zell at the time of his injury; (3) that Coleman-Zell had the right to control the details of the work being done by Bauernfeind; and (4) that Coleman-Zell was the primary beneficiary of the work done by Bauernfeind. Based upon these findings, the court concluded that an employer-employee relationship existed between Coleman-Zell and

709

Bauernfeind, and that the exclusive remedy rule of the Worker's Compensation Act, sec. 102.03(2), Stats., barred Bauernfeind's claim. Bauernfeind appealed from the court's decision.

The court of appeals initially reversed the circuit court's decision and remanded the case for further proceedings. The court of appeals held that the case was controlled by sec. 102.29(6), Stats., not by the *Seaman* test. Hence, the court opined, the trial court erred in applying the *Seaman* test. Coleman-Zell filed a motion for reconsideration, arguing that the statutory test was inapplicable because Coleman-Zell did not compensate Penda for Bauernfeind's services. The court granted the motion for reconsideration and subsequently withdrew and vacated its initial opinion. The court then certified the issue for appeal to this court. We now affirm the decision of the circuit court.

In *Seaman,* this court stated a four-prong test for determining whether an employee was a "loaned employee" of a "special employer." *Seaman,* 204 Wis. at 163. If such a relationship is found to have existed, the exclusive remedy rule of the Worker's Compensation Act bars the loaned employee from maintaining a tort action against the special employer. On occasion, we have noted that the *Seaman* test is difficult to apply because it is so fact oriented. *Gansch v. Nekoosa Papers, Inc.,* 158 Wis. 2d 743, 750–51, 463 N.W.2d 682 (1990); *see also Meka v. Falk Corp.,* 102 Wis. 2d 148, 158 n.13, 306 N.W.2d 65 (1981); *Freeman v. Krause Milling Co.,* 43 Wis. 2d 392, 394, 168 N.W.2d 599 (1969).

Effective November 28, 1981, the legislature enacted the temporary help agency statutes, secs. 102.29(6) and 102.01(2)(f), Stats. *Gansch,* 158 Wis. 2d at 751. These statutes were intended to simplify the

710

determination of whether an employee who was injured in the workplace may maintain a tort action against a temporary employer. *Id.* at 751–52. Section 102.29(6) provides:

> No employe of a temporary help agency who makes a claim for compensation may make a claim or maintain an action in tort against any employer who compensates the temporary help agency for the employe's services.

Thus, in order for a special employer to be immune from tort liability under sec. 102.29(6), Stats., the general employer must be a "temporary help agency" under sec. 102.01(2)(f), Stats. *Gansch,* 158 Wis. 2d at 752. Under sec. 102.01(2)(f) (1987–88),[3] a "temporary help agency" is defined as "an employer who places its employe with another employer who controls the employe's work activities and *compensates the first employer for the employe's services."* (Emphasis added.)

Coleman-Zell did not compensate Penda for Bauernfeind's services. Therefore, Penda is not a "temporary help agency," and Bauernfeind is not an employee of a temporary help agency. Because sec. 102.29(6), Stats., applies only to claims for compensation made by an employee of a temporary help agency, Bauernfeind's claim falls outside the scope of the statute.

---

[3] 1989 Act 64, sec. 62(2) changed the definition of "temporary help agency" by adding the word "leases" to the statute. This change, however, does not affect our analysis, because the change pertains only to injuries occurring after January 1990. The injuries in this case occurred on March 17, 1988.

Coleman-Zell argues that because the statute does not apply to the facts of this case, the *Seaman* test should be applied to determine whether Bauernfeind was a loaned employee of Coleman-Zell. In opposition, Bauernfeind argues that the legislature intended to completely supplant the *Seaman* test with the test set forth in sec. 102.29(6), Stats. He reasons that because sec. 102.29(6) does not bar his claim against Coleman-Zell, the exclusive remedy rule likewise does not bar his claim.

We agree with Coleman-Zell and conclude that sec. 102.29(6), Stats., was intended to replace the *Seaman* test only with respect to employees of a temporary help agency. The *Seaman* test remains intact with respect to all other alleged loaned employees who make a claim against a temporary employer. Thus, employees of a temporary help agency are subject to the statutory test, while all persons alleged to be loaned employees remain subject to the *Seaman* test. Nothing in the legislative history of the temporary help agency statutes expressly or impliedly contravenes this result.

Our conclusion that the legislature intended sec. 102.29(6), Stats., to replace the *Seaman* test only with respect to employees of a temporary help agency is consistent with recent developments in Wisconsin's worker's compensation law. In 1989, the legislature promulgated sec. 102.29(7), which provides:

> No employe who is loaned by his or her employer to another employer and who makes a claim for compensation under this chapter may make a claim or maintain an action in tort against the employer who accepted the loaned employe's services.

Section 102.29(7) took effect on January 1, 1990. Bauernfeind was injured on March 17, 1988. Hence, sec. 102.29(7) does not apply to Bauernfeind's claim. Nonetheless, sec. 102.29(7) demonstrates that the legislature realized that not all loaned employees would fall within the scope of sec. 102.29(6). To prevent such employees from circumventing the exclusive remedy rule, the legislature promulgated sec. 102.29(7). Similarly, our decision in this case recognizes that not all loaned employees fall within the scope of sec. 102.29(6), and applies the longstanding *Seaman* test to prevent such employees from circumventing the exclusive remedy rule.

The exclusive remedy rule is critical to the balance that the Worker's Compensation Act strikes between the interests of employers and employees. Under the act, employers are held strictly liable for all work-related injuries that befall their employees in return for immunity from tort action. *Mulder v. Acme-Cleveland Corp.,* 95 Wis. 2d 173, 180, 290 N.W.2d 276, 280 (1980). In turn, employees recover less than potentially available in a tort action in return for coverage of all work-related injuries regardless of fault. *Id.* The rule of law advanced by Bauernfeind would allow loaned employees who are not employed by a "temporary help agency" to recover worker's compensation benefits from their general employer *and* tort damages from their special employer. This result would tip the balance of interests in favor of loaned employees who are not employed by a temporary help agency, because it would allow them to avoid the exclusive remedy rule of the act, even if they stood in an employer-employee relationship with the special employer. It would also be inconsistent with the rationale underlying *Seaman*

713

and its progeny, which sought to prevent temporary employees from altering the balance by recovering in tort actions against temporary employers with whom they stood in an employer-employee relationship when they were injured.

Having concluded that Bauernfeind's claim is controlled by the "loaned employee" test originally set forth in *Seaman,* we now apply that test to the undisputed facts of this case. The application of the *Seaman* test to undisputed facts has traditionally been viewed as a question of law. *Gansch,* 158 Wis. 2d at 753. This court reviews questions of law without deference to the lower courts. *GTC Auto Parts v. LIRC,* 184 Wis. 2d 450, 460, 516 N.W.2d 393 (1994).

We note that Bauernfeind is appealing from a grant of summary judgment. When reviewing a grant of summary judgment, which is governed by sec. 802.08, Stats., we apply the same methodology as the circuit court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 314–15, 401 N.W.2d 816, 820 (1987). Because the relevant facts are undisputed in this case, the circuit court acted appropriately in applying the *Seaman* test and determining, as a matter of law, whether Bauernfeind was a loaned employee of Coleman-Zell.

The four-prongs of the *Seaman* "loaned employee" test are as follows:

(1) Did the employee (Bauernfeind) actually or impliedly consent to work for the special employer (Coleman-Zell)?

(2) Was the employee performing the special employer's work at the time of the injury?

(3)   Did the special employer have the right to control the details of the work being performed?

(4)   Was the work of the employee primarily for the benefit of the special employer?

*Seaman,* 204 Wis. at 163.

■

With respect to the first prong, we conclude that although Penda directed Bauernfeind to work for Coleman-Zell, Bauernfeind consented to the arrangement. We recognize that consent cannot be implied merely from the fact that the employee obeyed the commands of the general employer in performing work for a special employer. *Rhinelander Paper Co. v. Industrial Comm.,* 206 Wis. 215, 218, 239 N.W. 412 (1931). However, Bauernfeind did more than simply obey his supervisor's request that he work for Coleman-Zell.

■

After he entered the warehouse, Bauernfeind proceeded to work under the immediate and direct supervision of Zell, who was running the floor and telling the workers what to do and how to do it. Bauernfeind willingly worked for over two hours under the direction of Zell. There is absolutely no indication in the record that Bauernfeind ever made the slightest objection to working for Coleman-Zell. Instead, he followed specific instructions from Zell and worked side-by-side with other Coleman-Zell employees in a location where he did not usually work. Based on these facts, we conclude that Bauernfeind consented, albeit impliedly, to work for Coleman-Zell.

■

The second prong of the *Seaman* test requires us to determine whether Bauernfeind was performing Coleman-Zell's work at the time of the injury. Bauernfeind

715

concedes that he was doing Coleman-Zell's work at the time of his injury.

The third prong of the test requires us to determine whether Coleman-Zell had the right to control the details of the work being performed by Bauernfeind. We conclude that Coleman-Zell did have that right. Bauernfeind's supervisor at Penda instructed Bauernfeind to work for Zell. Penda apparently did not place a supervisor in the warehouse or give Bauernfeind any specific instructions regarding what to do at the warehouse. Because Penda was not in the business of installing storage racking, it relied on Zell to give appropriate instructions to Bauernfeind. Zell gave Bauernfeind specific instructions, which he followed until the time he was injured. These facts taken together indicate that Coleman-Zell had the right to control the details of the work being performed by Bauernfeind.

The fourth prong of the *Seaman* test requires us to determine whether the work done by Bauernfeind was done primarily for the benefit of Coleman-Zell. We conclude that it was. Coleman-Zell needed additional manpower to facilitate the transfer of racking materials from the loading dock to the place where th racking was to be assembled. The additional manpower provided by Bauernfeind expedited the unloading process and reduced Coleman-Zell's workload. These facts indicate that the work done by Bauernfeind was primarily for the benefit of Coleman-Zell.

In summary, we hold that Bauernfeind's claim is controlled by the four-prong "loaned employee" test originally stated in *Seaman,* 204 Wis. 157. Applying

that test, we hold as a matter of law that Bauernfeind was a loaned employee of Coleman-Zell when he was injured and, therefore, his claim is barred by the exclusive remedy rule of the Wisconsin Worker's Compensation Act.

   *By the Court*—The judgment of the circuit court is affirmed.

   JUSTICE ABRAHAMSON, took no part.