James L. WARR, Plaintiff-Appellant,

LIBERTY MUTUAL INSURANCE COMPANY,
Plaintiff,

v.

QPS COMPANIES, INC., f/k/a QPS Staffing Services,
and Federal Insurance Company,
Defendants-Respondents.

*No. 2006AP208. Submitted on briefs November 7, 2006.
—Decided December 19, 2006.*

2007 WI App 14

(Also reported in 728 N.W.2d 39.)

441

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Steven G. Kmiec* of *Kmiec Law Offices*, Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Frederick J. Strampe* and *Patryk Silver* of *Borgelt, Powell, Peterson & Frauen, S.C.*, Milwaukee.

Before Wedemeyer, P.J., Curley and Kessler, JJ.

¶ 1. WEDEMEYER, P.J.   James L. Warr and Liberty Mutual Insurance Company appeal from an order dismissing their complaint against QPS Companies, Inc. and Federal Insurance Company, following a grant of summary judgment. Warr contends that the trial court erred in ruling that his claim was barred by the worker's compensation statute. Because the statutory language does not preclude Warr's suit against QPS as a third-party and because whether QPS is liable under a theory of *respondeat superior* is dependent upon material factual issues, which need to be resolved by a fact finder, the trial court erred in granting summary judgment in this case. Accordingly, we reverse and remand for further proceedings.

## BACKGROUND

¶ 2.   In September 2002, Warr began working for Cornwell Staffing Services, a temporary help agency. In the spring of 2003, Cornwell directed Warr to perform general labor and packaging services for Cornwell's client, Baker & Baker. At Baker, Warr was trained by Baker employees and his supervisor was David Eischen, a Baker employee.

443

¶ 3.  Months earlier, in April 2002, Pastor Alanis began his employment with QPS Staffing Services, another temporary help agency. In August 2003, QPS directed Alanis to work as a machine operator for QPS's client, Baker.

¶ 4.  On October 21, 2003, Warr and Alanis were working at Baker with cake mix "dumping" machines. Alanis's machine was not working properly and he asked for Warr's assistance. Warr bypassed the safety switch to fix the machine and his right arm became stuck in the machine. Alanis, intending to free Warr's arm from the machine, panicked and hit the wrong button, causing the machine's cradle to crush Warr's hand/arm, causing injury. Warr was transported to the hospital for treatment.

¶ 5.  On March 24, 2005, Warr filed suit against QPS (and its insurer) on a *respondeat superior* liability theory for the actions of its employee, Alanis. On September 30, 2005, QPS filed a motion seeking summary judgment on the grounds that the suit was barred by the exclusive remedy provision of the worker's compensation statute or, in the alternative, that under the "borrowed servant rule," Alanis was the borrowed employee of Baker, and not QPS's employee, and therefore QPS cannot be held responsible for Alanis's negligence.

¶ 6.  Warr filed a brief in opposition to the motion for summary judgment, arguing that the worker's compensation law does not bar this claim because Warr was an employee of Cornwell and Alanis was an employee of QPS, as each was employed by their respective temporary help agencies. Thus, Warr contends that they did not work for the *same* employer and cannot be considered "co-employees." Warr continues that although the statutory language prohibits him from suing his tem-

porary employer, Baker, for the injuries, it does not prohibit him from suing Alanis's general employer as a third-party.

¶ 7. The trial court ruled in favor of QPS, reasoning that although Warr and Alanis both had different general employers (Warr was employed by Cornwell and Alanis was employed by QPS), they shared the same special employer—Baker. As such, the trial court concluded that Warr and Alanis were co-employees, and the exclusive remedy provisions of the worker's compensation statute applied to bar Warr's claim. Warr now appeals from that order.

## DISCUSSION

¶ 8. This case comes to us following a grant of summary judgment. We review summary judgment decisions independently, although we utilize the same methodology as the trial court. *Fazio v. DETF*, 2005 WI App 87, ¶ 8, 280 Wis. 2d 837, 696 N.W.2d 563, *aff'd*, 2006 WI 7, 287 Wis. 2d 106, 708 N.W.2d 326. We will affirm a grant of summary judgment if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

¶ 9. The issue in this case is one of first impression. There is no existing case law directly addressing the factual scenario presented here: when two employees, who each work for separate temporary help agencies are both placed with the same client of the temporary help agencies, can the employee who is injured by the conduct of the other employee sue the latter's temporary help agency under a theory of *respondeat superior.*

¶ 10. We start our analysis with the pertinent portions of the worker's compensation statute. WISCON-

445

SIN STAT. § 102.03(2) (2003–04)[1] provides that the employee's right to recover worker's compensation benefits shall be the employee's exclusive remedy against the employer: "Where such conditions exist the right to the recovery of compensation under this chapter shall be the exclusive remedy against the employer, any other employee of the same employer and the worker's compensation insurance carrier."[2]

¶ 11. In situations involving temporary help agencies, such as the instant case, the worker's compensation statute also provides: " 'Temporary help agency' means an employer who places its employee with or leases its employees to another employer who controls the employee's work activities and compensates the first employer for the employee's services, regardless of the duration of the services." WIS. STAT. § 102.01(2)(f). "No employee of a temporary help agency who makes a claim for compensation may make a claim or maintain an action in tort against any employer who compensates the temporary help agency for the employee's services." WIS. STAT. § 102.29(6). The statute also addresses situations involving loaned employees: "No employee who is loaned by his or her employer to another employer and who makes a claim for compensation under this chapter may make a claim or maintain an action in tort against the employer who accepted the loaned employee's services." WIS. STAT. § 102.29(7). As pertinent to the case before us, it is undisputed that both Cornwell and QPS were temporary help agencies. It is also undisputed that based on

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] The exceptions to the general rule contained within this statute are not pertinent to this appeal and therefore were omitted.

446

§ 102.29(6) and/or (7) that Warr is prohibited from making a third-party tort claim against Baker because Baker "compensate[d] Cornwell for Warr's services" and because Baker was "the employer who accepted the loaned employee's services."

¶ 12. Warr contends that the language in Wɪs. Stat. § 102.29(6) and (7) does not explicitly bar his third-party tort claim against QPS. We agree with Warr's contention in this regard. It is undisputed that QPS had no employment relationship with Warr. The situation presented in this case, where two separate temporary help agencies have placed respective employees with the same client for employment, and, during that employment, the injured employee files suit against the other employee's temporary help agency, was not explicitly addressed by the legislature. Perhaps this case will cause the legislature to consider this particular scenario. However, based on existing statutory language, we cannot conclude, as a matter of law, that Warr's claim against QPS is barred. Warr was not employed by QPS and QPS did not compensate Warr's employer (Cornwell) in any way.

¶ 13. As a preliminary issue, we first address the question of whether the language contained in Wɪs. Stat. § 102.03(2), stating that worker's compensation is the exclusive remedy against "*any other employee of the same employer,*" applies to the circumstances of this case. Warr contends that he and Alanis were not "employee[s] of the same employer." Rather, Warr argues that Warr was employed by Cornwell and Alanis was employed by QPS—thus, they had different employers. QPS, to the contrary, contends that Warr and Alanis were both employees of Baker—thus, they had

the same employer. We conclude that based on WIS. STAT. § 102.04(2m), which provides: "A temporary help agency is the employer of an employee whom the temporary help agency has placed with or leased to another employer that compensates the temporary help agency for the employee's services," Warr and Alanis were not "employee[s] of the same employer." Rather, based on the current language of the worker's compensation statute, temporary help employees remain employees of the temporary help agencies.

¶ 14.   Based on the foregoing, we conclude that the current language of the worker's compensation statute does not prohibit Warr from filing a tort lawsuit against Alanis's employer, QPS, under the theory of *respondeat superior.* Under this theory, "an employer can be held vicariously liable for the negligent acts of its employees while they are acting within the scope of their employment." *Murray v. Travelers Ins. Co.,* 229 Wis. 2d 819, 824, 601 N.W.2d 661 (Ct. App. 1999) (citation omitted). Under that theory, Warr must prove that QPS and Alanis had a "master/servant relationship." *Kerl v. Dennis Rasmussen, Inc.,* 2004 WI 86, ¶ 18, 273 Wis. 2d 106, 682 N.W.2d 328 (citation omitted). Thus, Warr must show that Alanis was a servant—that is, he was " 'employed to perform service for another in his affairs and who, with respect to his physical conduct in the performance of the service, is subject to the other's control or right to control.' " *Id.,* ¶ 19 (citations omitted). Conversely, Warr also needs to demonstrate with respect to Alanis that QPS was his master—that is, " 'a principal who employs an agent to perform service in his affairs and who controls or has the right to control the physical conduct

of the other in the performance of the service.' " *Id.* (citation omitted).[3]

■

¶ 15.   Resolution of the master/servant issue may be resolved by summary judgment when the facts are undisputed. Here, however, both sides dispute the particular facts regarding whether Alanis was a servant of QPS or whether he was a servant of Baker. Both sides dispute who actually controlled his work activities at the time the accident occurred. Warr argues that QPS retained sufficient control over Alanis and provides a variety of factual assertions to support his position. QPS, on the other hand, submits a variety of factual assertions to support its contention that QPS did not have any control over Alanis's work activities, his training or his supervision. Based on these disputed facts, we cannot resolve this issue as a matter of law. Rather, whether QPS should be held vicariously liable for Alanis's conduct presents an issue of fact, which needs to be resolved by a fact finder.

---

[3] We also note our supreme court's admonition in *Kerl v. Dennis Rasmussen, Inc.*, 2004 WI 86, ¶ 27, 273 Wis. 2d 106, 682 N.W.2d 328:

> Although the rationale for vicarious liability has expanded and the circumstances of its application have become more diverse, the basic formula for respondeat superior has remained the same: only a "master" who has the requisite degree of control or right of control over the physical conduct of a "servant" in the performance of the master's business will be held vicariously liable. To impose vicarious liability where the requisite degree of control is lacking would not serve the original or more recent justifications for the rule. If a principal does not control or have the right to control the day-to-day physical conduct of the agent, then the opportunity and incentive to promote safety and the exercise of due care are not present, and imposing liability without fault becomes difficult to justify on fairness grounds.

¶ 16. We also note that we have reviewed all of the cases submitted by the parties. None of the cases submitted address a situation, such as the one here, involving two distinct employees employed by two different temporary help agencies who are placed to work together at the same job site of a separate employer.

¶ 17. In *Gansch v. Nekoosa Papers, Inc.*, 158 Wis. 2d 743, 463 N.W.2d 682 (1990), the issue was whether the employer actually was a "temporary help agency" under the worker's compensation statute. *Id.* at 752–53. After concluding that the employer did constitute a "temporary help agency," the court declared that the four-part *Seaman Body Corp. v. Industrial Comm'n*, 204 Wis. 157, 235 N.W. 433 (1931) test, which had "been used to determine whether a borrowing employer and loaned employee have an employer-employee relation so that the loaned employee may not maintain a tort action against the borrowing employer[,]" *Gansch*, 158 Wis. 2d at 750, does not apply in situations where the employer is a temporary help agency, *id.* at 752–53. Rather, the *Gansch* court concluded that when the facts involve a temporary employer/temporary employee, the "control requirement" to bar suit is less stringent. *Id.* at 753. In order to bar suit against the temporary employer, it "need only control the work activities of the temporary employee." *Id.* The court then concluded that, based on the undisputed facts, Gansch, who was placed by his "temporary help agency" to work for Nekoosa Papers, could not maintain suit against Nekoosa Papers because Nekoosa Papers exercised sufficient control over Gansch's work activities. *Id.* at 754–55.

¶ 18. The *Gansch* scenario does not apply to the instant case, because we have already concluded that WIS. STAT. § 102.29(6) bars Warr's claim against Baker,

and because it is undisputed that Cornwall is a temporary help agency. This is different from the situation in *Gansch*. Additionally, in *Gansch*, there was no *second* temporary help agency or *second* temporary employee placed to work with the first temporary help agency's employee.

¶ 19. Similarly, *Bauernfeind v. Zell*, 190 Wis. 2d 701, 528 N.W.2d 1 (1995) did not involve a temporary help agency, and its holding clarified that the four-part *Seaman* test should still be utilized when allegedly loaned employees make a claim against a temporary employer *except* with respect to employees of a "temporary help agency," wherein the test set forth in Wis. STAT. § 102.29(6) should be used. *Bauernfeind*, 190 Wis. 2d at 712.

¶ 20. We reach a similar conclusion with respect to all of the remaining proffered cases. None of them involved the factual scenario presented here: where two separate employees of two different temporary help agencies are both placed at the same temporary employer when an injury occurs and one of the temporary help agency employees files suit against the second employee's temporary help agency on the basis of vicarious liability.

¶ 21. Based on our analysis, we conclude that Warr is not barred by the language of the worker's compensation statute from maintaining his action against QPS. We also conclude that the parties present disputed factual issues regarding whether QPS should be held vicariously liable for Alanis's conduct, which caused injury to Warr while both were working at Baker. Accordingly, we reverse the order granting summary judgment and remand this matter to the trial

court for further proceedings necessary to resolve the disputed factual issues with respect to Warr's theory of *respondeat superior.*

*By the Court.*—Order reversed and cause remanded for further proceedings.