Robert KOPFHAMER and Margaret Kopfhamer,
Plaintiffs-Respondents-Cross-Appellants,†

v.

MADISON GAS AND ELECTRIC COMPANY, Defendant-
Cross-Respondent,

WISCONSIN POWER AND LIGHT COMPANY, ABC Com-
pany and DEF Insurance Company, Defendants,

WISCONSIN PUBLIC SERVICE CORPORATION, Defendant-
Appellant-Cross-Respondent.

Court of Appeals

*No. 01–1384. Submitted on briefs August 8, 2002.—Decided
October 2, 2002.*

2002 WI App 266

(Also reported in 654 N.W.2d 256.)

† Petition to review denied 12-10-02.

On behalf of the defendant-appellant-cross-respondent, the cause was submitted on the briefs of *Bruce A. Schultz* of *Coyne, Niess, Schultz, Becker & Bauer, S.C.*, Madison.

On behalf of the plaintiffs-respondents-cross-appellants, the cause was submitted on the briefs of *Mark W. Andrews* of *Winner, Wixson & Pernitz*, Madison.

On behalf of the defendant-cross-respondent, the cause was submitted on the briefs of *Bruce D. Huibregtse* and *Barbara A. Neider* of *Stafford Rosenbaum LLP*, Madison.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

¶ 1. ANDERSON, J. This is a personal injury tort action arising out of an industrial accident that occurred during the course and scope of Robert Kopfhamer's employment. On appeal, Wisconsin Public Service Corporation (WPSC) contends that the trial court erred when it ruled that WPSC was equitably and judicially estopped from invoking the exclusivity provisions of the Worker's Compensation Act (WCA) in order to seek protection from Robert and Margaret Kopfhamers' tort claim. WPSC is correct. We reverse and hold that, as a matter of law, WPSC is entitled to summary judgment and is dismissed from the case.

¶ 2. On cross-appeal, the Kopfhamers make two claims. First, they argue that the trial court erred when, at the close of trial, it dismissed Madison Gas and Electric Company (MGE) from the case. The Kopfhamers contend that the evidence showed that WPSC was MGE's agent and that therefore MGE was vicariously liable for WPSC's tort. The trial court disagreed and found that MGE was not vicariously liable because WPSC was an independent contractor, not an agent of MGE. On this issue, the trial court is correct; therefore, we affirm.

¶ 3. The Kopfhamers also cross-appeal the trial court's decision to apply the collateral source rule. They argue that information concerning collateral sources of wages and benefits should not have been utilized to reduce their loss of earnings claims. Given our decision to dismiss WPSC from the case, the collateral source issue is moot.

### Facts

¶ 4. Robert's injury occurred on April 27, 1994, at the Kewaunee Nuclear Power Plant (KNPP). The

363

KNPP is owned by three Wisconsin public utilities— WPSC, MGE, and Wisconsin Power and Light Company (WPL). Pursuant to written agreements among the owners, WPSC was the utility responsible for the operation of the plant. WPSC and WPL entered into an agreement (Peaker Agreement) wherein WPL would provide skilled employees to WPSC to perform maintenance work during scheduled shutdowns at the KNPP. The Peaker Agreement specifically provided that WPSC "shall assign specific tasks to the Employees after arrival at the KNPP and shall in all respects direct and control such Employees in their performance of the assigned tasks . . . . Each Employee shall continue to be an employee of WPL." It further provided that "WPL shall have exclusive responsibility for the payment of salary, wages, workers' compensation, payroll taxes and all employee benefits for the Employees" and that WPL will bill WPSC for the employees' wages plus a loading factor.

¶ 5. WPL employees assigned to work at the KNPP for WPSC during these scheduled plant shutdowns were known as "peakers." While remaining employees of WPL, the peakers were to be under the direct supervision and control of WPSC during the periods they worked at the KNPP.

¶ 6. Robert was working as a peaker at the KNPP when his accident occurred. After his accident, Robert made a claim under the WCA and received compensation from his employer, WPL, for injuries sustained in his accident.

¶ 7. In addition to Robert's worker's compensation claim, the Kopfhamers filed a civil action against MGE, WPL and WPSC.[1] In response, two summary judgment motions were filed—one by MGE and one jointly by WPL and WPSC.

¶ 8. **MGE.** MGE's summary judgment motion was granted with the exception of the Kopfhamers' claim that MGE was negligent in the original design of the KNPP. At the close of the Kopfhamers' case, MGE moved for dismissal pursuant to WIS. STAT. § 805.14(3)

---

[1] The first four causes of action alleged that Robert was an employee of WPL. Count One alleged safe-place violations against WPSC and MGE. Count Two alleged ordinary negligence against WPSC and MGE. Count Three alleged negligence against WPL and MGE in the selection of WPSC to operate the KNPP. Count Four alleged negligence against WPL in the operation of the KNPP and alleged that WPSC and MGE are vicariously liable as joint venturers for the negligence of WPL.

The next three causes of action alleged that Robert was an employee of WPSC. Count Five alleged safe-place violations against WPL and MGE. Count Six alleged ordinary negligence against WPL and MGE. Count Seven alleged negligence against WPSC in the operation of the KNPP and that WPL and MGE are vicariously liable as joint venturers for the negligence of WPSC in the operation of the KNPP and that WPL and MGE are vicariously liable as joint venturers for the negligence of WPSC.

Counts Eight and Nine were product liability claims against the unknown manufacturer of the allegedly defective equipment involved in Robert's injury and against the unknown manufacturer's liability insurer. The parties were not able to identify the manufacturer or its insurer and thus, the claims against these entities were not pursued. Count Ten is a derivative cause of action seeking damages for loss of consortium on behalf of Margaret Kopfhamer.

(1999–2000).[2] That motion was granted and MGE was dismissed entirely from the case.

¶ 9. The Kopfhamers cross-appeal MGE's dismissal arguing that (1) MGE should be held vicariously liable for the damages suffered by the Kopfhamers and (2) information concerning collateral sources of wages and benefits should not have been utilized to reduce the plaintiff's loss of earnings claims.

¶ 10. **WPL.** For context, we briefly discuss WPL's procedural status, though it is not a party on appeal or cross-appeal. The summary judgment motion filed jointly by WPL and WPSC was based upon the exclusive remedy provision of the WCA, Wis. Stat. § 102.03(2),[3] and argued that both WPL and WPSC were protected from the Kopfhamers' claim. The trial court granted the

---

[2] Wisconsin Stat. § 805.14(3) provides:

> **(3)** Motion at close of plaintiff's evidence. At the close of plaintiff's evidence in trials to the jury, any defendant may move for dismissal on the ground of insufficiency of evidence. If the court determines that the defendant is entitled to dismissal, the court shall state with particularity on the record or in its order of dismissal the grounds upon which the dismissal was granted and shall render judgment against the plaintiff.

All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

[3] Wisconsin Stat. § 102.03 provides in pertinent part:

> **(1)** Liability under this chapter shall exist against an employer only where the following conditions concur:
>
> (a) Where the employee sustains an injury.
>
> (b) Where, at the time of the injury, both the employer and employee are subject to the provisions of this chapter.
>
> (c) 1. Where, at the time of the injury, the employee is performing service growing out of and incidental to his or her employment.
>
> . . . .

motion with regard to WPL. No appeal was taken. Accordingly, WPL's interest—reimbursement pursuant to Wis. Stat. § 102.29(1)[4] for compensation paid to Robert—is not before us.

¶ 11. **WPSC.** In WPSC and WPL's joint motion for summary judgment, they specifically argued that WPSC was protected pursuant to either Wis. Stat. § 102.29(6) or (7).[5] From the beginning, WPSC admit-

---

4. The premises of the employer include the premises of any other person on whose premises the employee performs service.

. . . .

**(2)** Where such conditions exist *the right to the recovery of compensation under this chapter shall be the exclusive remedy against the employer,* any other employee of the same employer and the worker's compensation insurance carrier . . . . (Emphasis added.)

[4] Wisconsin Stat. § 102.29(1) provides in pertinent part:

**(1)** The making of a claim for compensation against an employer or compensation insurer for the injury or death of an employee shall not affect the right of the employee, the employee's personal representative, or other person entitled to bring action, to make claim or maintain an action in tort against any other party for such injury or death, hereinafter referred to as a 3rd party; nor shall the making of a claim by any such person against a 3rd party for damages by reason of an injury to which ss. 102.03 to 102.64 are applicable, or the adjustment of any such claim, affect the right of the injured employee or the employee's dependents to recover compensation. The employer or compensation insurer who shall have paid or is obligated to pay a lawful claim under this chapter shall have the same right to make claim or maintain an action in tort against any other party for such injury or death . . . .

[5] Wisconsin Stat. § 102.29(6) and (7) provide:

**(6)** No employee of a temporary help agency who makes a claim for compensation may make a claim or maintain an action in tort against any employer who compensates the temporary help agency for the employee's services.

ted that Robert was an employee of WPL and asserted that it nonetheless was protected by the exclusive remedy rule of the WCA.

¶ 12. In addressing the motion for summary judgment as it pertained to WPSC, the trial court did not reach the merits and instead held that WPSC was estopped from asserting that it was Robert's employer. However, the record reveals that WPSC never asserted that it was Robert's employer. Rather, WPSC consistently asserted the affirmative defense that it was protected by the WCA pursuant to either the temporary help agency (WIS. STAT. § 102.29(6)) or the loaned employee (§ 102.29(7)) sections of that statute.

¶ 13. To support its estoppel decision, the trial court relied on statements it had made at an earlier hearing. The subject of that hearing was a motion by the Kopfhamers to reconsider the court's dismissal of WPL from the case. WPSC did not appear at the hearing, believing that it did not have an interest at stake. The court believed otherwise and determined that because WPSC did not appear, it could not later claim the protection of the WCA. Specifically, the court stated:

> I can assure you that because [WPSC and/or others] haven't jumped in here, there is no way this Court's going to grant the fact that [any of them] are the employers of Mr. Kopfhamer because they had the opportunity to come in now and do so and they didn't. I mean they could have, but they haven't.
>
> I think that's a good sign to me that they're not

---

(7) No employee who is loaned by his or her employer to another employer and who makes a claim for compensation under this chapter may make a claim or maintain an action in tort against the employer who accepted the loaned employee's services.

considering themselves to be the employer, and I can assure you if they come in now and try to use that tactic, it's not going to work because they have certainly had that—it's almost like a preclusion on the estoppel time situation.

¶ 14. Thereafter, WPSC continued to assert the exclusive remedy defense. First, WPSC filed an interlocutory appeal; at that time, we declined to review the merits of the trial court's ruling. Next, WPSC filed a motion with the trial court for reconsideration, which was denied. Then WPSC filed an amended answer, again raising the exclusive remedy defense. WPSC filed a second motion for summary judgment on the same grounds as the first. The trial court denied this motion as well.

¶ 15. At the close of the Kopfhamers' case, WPSC again asserted its affirmative defense. In response, the trial court stated that its earlier rulings were unclear because the law of judicial estoppel is "all over the place." The trial court then stated that WPSC had waived the exclusivity defense. At the close of evidence, WPSC brought a similar motion asserting its affirmative defense. This motion was summarily denied.

¶ 16. Finally, after having been found causally negligent by the jury, which awarded damages of over $1.3 million to the Kopfhamers, WPSC filed a motion after verdict again raising its defense. WPSC's motion was denied. Again the court ruled that WPSC was barred from asserting the exclusivity defense because of judicial and equitable estoppel. The court entered its final judgment. WPSC appeals and the Kopfhamers cross-appeal.

## Standard of Review

¶ 17. On appeal, we review the trial court's decision to employ estoppel in response to WPSC's motion for summary judgment; we also interpret portions of the WCA.

■

¶ 18. **Summary Judgment.** The material facts underlying the trial court's decision are undisputed. Although we employ the same methodology set forth in WIS. STAT. § 802.08(2) as the circuit courts, *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987), we review the application of legal principles to undisputed facts in a summary judgment disposition without deference to the lower courts. *See Estate of Hegarty ex rel. Hegarty v. Beauchaine*, 2001 WI App 300, ¶ 14, 249 Wis. 2d 142, 638 N.W.2d 355. Under § 802.08(2), summary judgment shall be granted only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■

¶ 19. **Statutory Interpretation.** We perform the task of statutory interpretation without deference to the circuit court. *DeMars v. LaPour*, 123 Wis. 2d 366, 370, 366 N.W.2d 891 (1985). We first look to the language of the statute itself and attempt to interpret it based on "the plain meaning of its terms." *State v. Williquette*, 129 Wis. 2d 239, 248, 385 N.W.2d 145 (1986). Only when statutory language is ambiguous may we examine other construction aids, such as legislative history, context, and subject matter. *State v. Waalen*, 130 Wis. 2d 18, 24, 386 N.W.2d 47 (1986). A

370

statute is ambiguous if reasonable persons could disagree as to its meaning. *Williquette*, 129 Wis. 2d at 248. The application of a statute to undisputed facts is a question of law which we review de novo. *State v. Wilke*, 152 Wis. 2d 243, 247, 448 N.W.2d 13 (Ct. App. 1989).

## Discussion

■

¶ 20. **Appeal.** The question on appeal is whether the exclusive remedy rule of the WCA bars the Kopfhamers' claim against WPSC. We hold that under Wis. Stat. §§ 102.29(6) and 102.01(2)(f), WPL was a "temporary help agency" and Robert was placed with WPSC by WPL, thereby affording WPSC the protection of the exclusive remedy rule. This protection bars the Kopfhamers' claim against WPSC. This holding comports with the goal of the exclusive remedy rule:

> The exclusive remedy rule is critical to the balance that the Worker's Compensation Act strikes between the interests of employers and employees. Under the act, employers are held strictly liable for all work-related injuries that befall their employees in return for immunity from tort action. In turn, employees recover less than potentially available in a tort action in return for coverage of all work-related injuries regardless of fault.

*Bauernfeind v. Zell*, 190 Wis. 2d 701, 713, 528 N.W.2d 1 (1995) (citations omitted). In *Bauernfeind*, our supreme court specifically explained the purpose of the temporary help agency statutes as a means to "simplify the determination of whether an employee who was injured in the workplace may maintain a tort action against a temporary employer." *Id.* at 710–11. Section 102.29(6) provides:

> No employee of a temporary help agency who makes a claim for compensation may make a claim or maintain

an action in tort against any employer who compensates the temporary help agency for the employee's services.

¶ 21. Thus, "in order for a special employer to be immune from tort liability under sec. 102.29(6), Stats., the general employer must be a 'temporary help agency' under sec. 102.01(2)(f), Stats." *Bauernfeind*, 190 Wis. 2d at 711. Under § 102.01(2)(f), a "temporary help agency" is defined as

> an employer who places its employee with or leases its employees to another employer who controls the employee's work activities and compensates the first employer for the employee's services, regardless of the duration of the services.

The application of the temporary help agency provisions is not limited to employers such as Manpower, Inc. or Kelly Services that are "in the business" of placing temporary help. *Gansch v. Nekoosa Papers, Inc.*, 158 Wis. 2d 743, 748–49, 463 N.W.2d 682 (1990).

¶ 22. The Peaker Agreement entered into and acted upon by WPL and WPSC created a "temporary help agency" under the WCA. The Peaker Agreement specifically provided that WPSC "shall assign specific tasks to the Employees after arrival at the KNPP and shall in all respects direct and control such Employees in their performance of the assigned tasks . . . . Each Employee shall continue to be an employee of WPL." It further provided that "WPL shall have exclusive responsibility for the payment of salary, wages, workers' compensation, payroll taxes and all employee benefits for the Employees" and that WPL will bill WPSC for the employees' wages plus a loading factor.

¶ 23. In other words, under WIS. STAT. §§ 102.29(6) and 102.01(2)(f), WPL was a "temporary help agency" because it was an employer who placed its employee (Robert) with an employer (WPSC) who controlled the employee's work activities and compensated the first employer (WPL) for the employee's services. As such, Robert's claim for and recovery of compensation under the WCA was his exclusive remedy. Section 102.29(6) bars him from making a claim or sustaining an action in tort against an employer who compensated a temporary help agency for his services. WPSC controlled Robert's work activities and compensated WPL for Robert's services; therefore, Robert's claim is barred.

¶ 24. Moreover, WPSC's actions would not have merited the application of judicial estoppel even if its application were an option. Judicial estoppel is an equitable rule applied at the discretion of the court to prevent a party from adopting inconsistent positions in legal proceedings. *State v. Petty*, 201 Wis. 2d 337, 347, 548 N.W.2d 817 (1996). The purpose of judicial estoppel is to preserve the integrity of the judicial system and prevent litigants from playing "fast and loose" with the courts. *Harrison v. LIRC*, 187 Wis. 2d 491, 497, 523 N.W.2d 138 (Ct. App. 1994). WPSC asserted a consistent position throughout the proceedings and hardly played fast and loose by not attending a motion hearing in which it was not a named party.

¶ 25. **Cross-appeal.** The Kopfhamers argue that the trial court erred when it granted MGE's motion for summary judgment and dismissed MGE from the case. The Kopfhamers contend that the evidence showed that WPSC was MGE's agent and that therefore MGE was vicariously liable for WPSC's tort. The trial court dis-

agreed and found that MGE was not vicariously liable because WPSC was an independent contractor, not an agent of MGE.

¶ 26. It is well established that "one who contracts with an independent contractor is not liable to others for the torts of the independent contractor." *Snider v. N. States Power Co.*, 81 Wis. 2d 224, 232, 260 N.W.2d 260 (1977). Thus, if WPSC is an independent contractor, MGE would not be vicariously liable to the Kopfhamers for the torts of WPSC.

¶ 27. The determinative issue is whether WPSC is an independent contractor. We hold that the facts establish that WPSC operated the KNPP as an independent contractor and that therefore the trial court correctly held that MGE was not vicariously liable to the Kopfhamers.

¶ 28. The operating agreement among the three owners shows that MGE and WPL contracted with WPSC to operate and maintain the KNPP and that WPSC's performance of this undertaking was not subject to control by MGE or WPL. Pertinent portions of this agreement state:

> *The Nuclear Plant will be directly operated and maintained by the "Operating Company"* in accordance with good utility operating practices and the general policies to be established by the Operating Committee. Until otherwise agreed by all of the Companies, *Service Company [WPSC] shall be the Operating Company,* and the Atomic Energy Commission licensee. It shall operate and maintain the Nuclear Plant in the same manner as if it were one of its own generating stations, utilizing its own employees and supervisory personnel as required in the performance of this Agreement, and

374

any independent technical advisors which it may select, and otherwise *acting in all respects as though it were an independent contractor* engaged by the Companies to be responsible for the result to be attained, i.e., generation of power and energy at the Nuclear Plant, as economically as possible, and delivery thereof to the connected 345 KV transmission system for transmission to the Companies, the Operating Company *having sole responsibility* for the specific manner of attaining that result. (Emphasis added.)

¶ 29. This agreement expressly reveals that WPSC was to "operate and maintain" the KNPP acting as "an independent contractor engaged by the Companies to be responsible for the result to be attained"—the generation of power and energy at the KNPP as economically as possible. WPSC was given "sole responsibility for the specific manner of attaining that result" and was to "operate and maintain the . . . Plant . . . as if it were one of its own."

¶ 30. In *Bulgrin v. Madison Gas & Electric Co.*, 125 Wis. 2d 405, 407, 373 N.W.2d 47 (Ct. App. 1985), we interpreted an operating agreement that was substantially identical to the agreement at issue here.[6] There,

---

[6] The pertinent portions of the operating agreement in *Bulgrin v. Madison Gas & Electric Co.*, 125 Wis. 2d 405, 410, 373 N.W.2d 47 (Ct. App. 1985), stated:

The 1975 Unit will be directly operated and maintained by the "Operating Company" in accordance with good utility operating practices and the general policies to be established by the Operating Committee. Power Company shall be the Operating Company. It shall operate and maintain the 1975 Unit in the same manner as if it were one of its own generating stations, utilizing its own employees and supervisory personnel as required in the performance of this Agreement, and any independent technical advisers which it may select, and otherwise acting in all respects as though it were an independent contractor engaged by the Companies to be

an employee of WPL was injured on the job at the Columbia Energy Center (CEC). *Id.* The CEC was also owned by MGE, WPL and WPSC, except that WPL was the operating company. *Id.* at 410. The issue was whether the non-operating companies had made a prima facie showing that the injured employee was their employee, thus entitling them to the protection of the exclusive remedy rule. *Id.* at 407. We held that based on the operating agreement, the non-operating companies surrendered to WPL their right to supervise and control the employees at the CEC and that there- fore the injured employee was not an employee of the non-operating companies. *Id.* at 411–12.

¶ 31. In *Bulgrin*, we noted that the primary test to determine whether a person is an employee is whether the employer has the right to control the details of that person's work. *Id.* at 412–13. *Bulgrin* governs because the same test is used to determine whether a person is an independent contractor. *See Snider*, 81 Wis. 2d at 232.

¶ 32. Under this test and upon the record before us, we conclude, as we did in *Bulgrin*, that the non-operating company surrendered to the operating company its right to supervise and control the employees at the plant. *See Bulgrin*, 125 Wis. 2d at 411–12. Specifically, MGE surrendered to WPSC its right to supervise and control the employees at the KNPP. As such, WPSC

responsible for the result to be attained, i.e. generation of power and energy at the 1975 Unit, as economically as possible, and delivery thereof to the connected 345 KV transmission system for transmission to the Companies, the Operating Company having sole responsibility for the specific manner of attaining that result. During operation conditions which the Operating Company in its sole judgment deems abnormal, the Operating Company shall take such action as it deems appropriate to safeguard equipment and to maintain service of the 1975 Unit.

was not an agent of MGE; it was an independent contractor. Thus, as a matter of law, MGE cannot be held vicariously liable for the damages sustained by the Kopfhamers.[7]

¶ 33.　Finally, as stated earlier, because we reverse the trial court's holding on appeal and dismiss WPSC from the case, the collateral source issue is moot.

*By the Court.*—Judgment reversed; cross-appeal affirmed.

---

[7] The Kopfhamers also advance another theory of vicarious liability. They assert that "pursuant to federal law" MGE had a nondelegable duty regarding the operation of the plant. They argue that, based on this nondelegable duty, MGE should be held vicariously liable for WPSC's tort. This theory incorrectly assumes that the Kopfhamers have a private right of action to maintain such a claim. However, a private cause of action does not exist in light of Congress' express prohibition against private enforcement of the Atomic Enforcement Act in 42 U.S.C. § 2271(c), which provides that: "No action shall be brought against any individual or person for any violation under this chapter . . . except by the Attorney General of the United States . . . ." *Brown v. Northeast Nuclear Energy Co.*, 48 F. Supp. 2d 116, 121–22 (D. Conn. 1999). In light of this explicit language, the Kopfhamers cannot state a private cause of action claiming a violation of the federal nuclear safety regulations. *See id.*