Jacquelyn PERONTO and Daniel Peronto,
Plaintiffs-Appellants,

ZURICH AMERICAN INSURANCE COMPANY and Primax
Recoveries, Inc., Involuntary-Plaintiffs,

v.

CASE CORPORATION, Defendant-Respondent,

ABC INSURANCE COMPANY, Defendant.

Court of Appeals

*No. 04–0846. Submitted on briefs December 15, 2004.—Decided
January 26, 2005.*

2005 WI App 32

(Also reported in 693 N.W.2d 133.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Charles David Schmidt* of *Cannon & Dunphy, S.C.*, Brookfield.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Ralph A. Weber* and *Beth Ermatinger Hanan* of *Gass Weber Mullins LLC*, Milwaukee.

Before Anderson, P.J., Brown and Nettesheim, JJ.

¶ 1. ANDERSON, P.J.   The sole issue in this case is whether Wis. Stat. § 102.29(6) (2003–04)[1] bars Jacquelyn and Daniel Peronto from recovering damages in this negligence action against Case Corporation because Jacquelyn was an employee of a "temporary help agency" at the time of her accident. We hold that

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

Jacquelyn's employer, Compass Group USA, Inc., did not place her with Case, Case did not control her work activities and Case did not compensate Compass for Jacquelyn's services. Accordingly, we hold that Jacquelyn was not employed by a "temporary help agency" and § 102.29(6) does not preclude her recovery. We reverse the circuit court's grant of summary judgment in favor of Case and remand for proceedings consistent with this opinion.

## FACTS

¶ 2. In March 2000, Jacquelyn was an employee of the Eurest Dining Services Division of Compass, a food and hospitality service contractor. At that time, Compass was under contract with Case to provide catering and vending services for Case's Racine facilities. Jacquelyn was among the Compass employees providing these services.

¶ 3. The pertinent portions of the parties' agreement are as follows:

> It is mutually understood and agreed, and it is the intent of the parties that an independent contractor relationship be and is hereby established under the terms and conditions of this Agreement; that employees of Compass are not nor shall be deemed to be employees of [Case]; and, that employees of [Case] are not nor shall they be deemed to be employees of Compass.
>
> Compass shall hire all employees necessary for the performance of this Agreement.
>
> [Case] further agrees that Compass' facilities and services, as well as the food prepared by Compass, shall at times be subject to inspection by an authorized, capable person or persons designated by [Case].

Compass agrees that its employees and agents shall comply with and observe all applicable rules and regulations concerning conduct on the Premises which [Case] imposes upon [Case's] employees and agents.

The agreement also states that Case would pay Compass a management fee and reimburse Compass for its "costs of business," including, but not limited to, the costs of all labor performing services (wages, salaries, vacation pay, worker's compensation premiums or costs, etc.), products and supplies, indirect overhead, and all other operating expenses.

¶ 4. Compass paid Jacquelyn, trained her, set her hours and approved her vacations and sick time, disciplined her and assigned her to specific facilities at Case. Jacquelyn reported to a Compass supervisor, was assigned daily tasks by a Compass supervisor, requested new supplies and maintenance from her Compass supervisor, prepared meals from a Compass recipe list and served meals when Compass instructed. Case provided Jacquelyn with an identification card and building keys. Case also provided Jacquelyn with the equipment she used. When Case facilities were closed due to plant shutdowns or holidays, Jacquelyn's schedule would change. According to Jacquelyn, she also had rare contact with a Case supervisor. Jacquelyn worked with Case employees to promote use of the on-site cafeterias through theme days and menu items. The cafeteria Jacquelyn worked in was subject to inspection by Case employees.

¶ 5. On March 24, while walking to one of Case's cafeterias, Jacquelyn fell up to her waist through an allegedly improperly covered storm grate. As a result of the fall, Jacquelyn suffered severe injuries to her left ankle and right knee. Jacquelyn filed a worker's compensation claim with Compass's insurer, Zurich Ameri-

can Insurance Company, and has received benefits stemming from that claim.

¶ 6.   In March 2003, Jacquelyn and her husband, Daniel, filed the present negligence action against Case. In October, Case responded with a motion for summary judgment. Case claimed immunity pursuant to the exclusive remedy provision in Wis. Stat. § 102.29(6), which, under certain circumstances, limits the recovery of employees of temporary help agencies to their worker's compensation benefits. The circuit court walked through the three-part test for determining whether an employer is a "temporary help agency" under the worker's compensation statute, determined that Compass satisfied that test and granted Case's motion for summary judgment. Jacquelyn appeals from that judgment.

## STANDARD OF REVIEW

¶ 7.   The standard of review following a grant of summary judgment is well known and need not be repeated here. *See* Wis. Stat. § 802.08(2); *Mullen v. Walczak*, 2003 WI 75, ¶ 11, 262 Wis. 2d 708, 664 N.W.2d 76. Our review is de novo. *Mullen*, 262 Wis. 2d 708, ¶ 11. This case involves the interpretation and application of two statutes, both of which present a question of law subject to this court's independent review. *See State v. Franklin*, 2004 WI 38, ¶ 5, 270 Wis. 2d 271, 677 N.W.2d 276.

## DISCUSSION

¶ 8.   The question on appeal is whether the temporary help agency provisions of the Worker's Compen-

804

sation Act bar the Perontos' claims against Case. WIS-CONSIN STAT. § 102.29(6) provides: "No employee of a temporary help agency who makes a claim for compensation may make a claim or maintain an action in tort against any employer who compensates the temporary help agency for the employee's services." Thus, in order for Case to be immune from tort liability under § 102.29(6), Compass must be considered a "temporary help agency," which is defined in WIS. STAT. § 102.01(2)(f).

¶ 9. A "temporary help agency" is not limited under the statutes to an employer, such as Kelly Services or Manpower, Inc., who is in the business of placing its employees with another employer. *Gansch v. Nekoosa Papers, Inc.*, 158 Wis. 2d 743, 748–49, 463 N.W.2d 682 (1990). Instead, under the statute, a "temporary help agency" has the following characteristics: (1) an employer who places its employee with a second employer, (2) the second employer controls the employee's work activities, and (3) the second employer compensates the first employer for the employee's services. WIS. STAT. § 102.01(2)(f); *Kaelber Plumbing & Heating v. LIRC*, 160 Wis. 2d 342, 351–52, 465 N.W.2d 829 (Ct. App. 1991). We apply each factor to the relationship between Case and Compass in seriatim.

### Placement

¶ 10. Jacquelyn asserts that Compass did not "place" her with Case. She points out that her work duties directly assisted Compass in fulfilling its own contractual obligation with Case and maintains that simply because she was physically working at a Case facility while she performed those duties does not

805

mean that Compass had placed her with Case for purposes of the temporary help agency definition. We agree.

¶ 11. The placement element of WIS. STAT. § 102.01(2)(f) turns not on the physical proximity of the employee to an employer, but rather upon the purpose of the employee's work. In other words, "placement" is a matter of *whose work* the employee is performing, not *where* the work is being performed. Contrary to Case's assertions, this understanding of the placement requirement neither adds words to the statute nor frustrates the statute's purpose. *See* WIS. STAT. § 102.29(1) (the Worker's Compensation Act's exclusive remedy provision does not apply to third-party tortfeasors); *Nelson v. Rothering*, 174 Wis. 2d 296, 302, 496 N.W.2d 87 (1993) (noting that the purpose of the Worker's Compensation Act was to protect workers and their employers, not to extend immunity to third parties).

¶ 12. Case and Compass had a contractual arrangement that left the details of how to fulfill that contract to Compass. Compass maintained exclusive control over the day-to-day operations of the catering and vending services, including the employees. The purpose of Jacquelyn's work was to assist Compass in fulfilling its contractual obligations—to plan meals, prepare meals, serve meals and clean up after meals. Her activities at the Case facility had only an incidental benefit to Case—well-fed employees. Thus, while Jacquelyn worked *at* Case facilities, she did not work *for* Case. Indeed, the parties' agreement specifically stated more than once that Compass employees were not, under any circumstances, to be deemed employees of Case. Therefore, Compass did not "place" her with Case for purposes of WIS. STAT. § 102.01(2)(f).

806

## Control

¶ 13.   Jacquelyn next asserts that Case did not "control" her work activities. She points us to Labor and Industry Review Commission decisions in which the commission stated that the control element of Wis. STAT. § 102.01(2)(f) requires some evidence of compulsion or specific direction concerning the employee's daily activities.[2] She urges us to adopt this standard and contends that no such evidence of compulsion or specific direction exists in this case.

¶ 14.   We recognize that we are not bound by commission decisions from other cases; however, we agree with Jacquelyn that the commission's standard as to the level of control necessary to satisfy the control element of the temporary help agency definition is the proper standard. The previous cases addressing the scope of the statutory formulation of the control requirement teach us that the special or borrowing employer need not have exclusive control over the work activities of the temporary or loaned employees; rather, the special employer need only have "some control" over the work activities of the temporary employees. *See Kaelber*, 160 Wis. 2d at 351–52 n.4; *Gansch*, 158 Wis. 2d at 753.

¶ 15.   Case would have us interpret "some control" broadly to include any amount of authority or influence an employer might have over an employee over the course of his or her employment. However, every employer could be said to exert some minimal degree of

---

[2] *See, e.g., Connecticut Indem. Co. v. Liberty Mut. Ins. Co.*, No. 96013645, 1997 WL 151105, at *4 (Wis. Labor and Indus. Review Comm'n Mar. 25, 1997) (determining that the control element requires compulsion or specific directions that the employee must follow).

control over nearly every employee of another employer that steps onto its premises. Therefore, for the control requirement to have any meaning whatsoever, it must require something more. This fact is reflected in each of the cases where courts have held the control of the special employer over the temporary employee to be sufficient. In each of those cases, the special employer provided specific directions to the temporary employee concerning the employee's day-to-day work activities, i.e., precisely what work was to be performed, when it was to be performed and how it was to be performed. *Gansch*, 158 Wis. 2d at 754 (Gansch reported to the paper mill's foreman each morning and the foreman instructed him about his duties each day); *Kaelber*, 160 Wis. 2d at 349 (loaned employee was given directions on a daily basis by Kaelber employees as to where to lay sewer pipe and dig trenches, including the location, direction and depth of the trenches); *Kopfhamer v. Madison Gas and Elec. Co.*, 2002 WI App 266, ¶ 22, 258 Wis. 2d 359, 654 N.W.2d 256 (agreement provided that the special employer would assign specific tasks to the temporary employees and would "in all respects direct and control such Employees in their performance of the assigned tasks"). With these cases in mind, we, like the commission, conclude that the control element requires some degree of compulsion or specific directions concerning the employee's daily activities.

¶ 16. Applying this standard to the facts of record, we conclude that Case's supervision of Jacquelyn was not sufficient to constitute control of her work activities under WIS. STAT. § 102.01(2)(f). Jacquelyn reported to a Compass supervisor; she only had rare contact with a Case supervisor. Her Compass supervisor told her when to serve the meals, what meals to serve and when to clean. Her Compass supervisor primarily handled her

maintenance and new supplies requests. Although Jacquelyn's schedule coincided with Case's plant shutdowns or holidays and she had an identification card and building keys, it was her Compass supervisor who set her hours; he was the one who told her when to arrive in the morning and when she could leave in the afternoon. It was her Compass supervisor who authorized her vacations and sick time.

¶ 17. Furthermore, while the contract between Case and Compass provided that Compass employees would be subject to Case rules and regulations, there is no evidence that these rules and regulations were pertinent to Jacquelyn or her job performance. Jacquelyn was trained by Compass and it was her Compass supervisor who was responsible for disciplining her when necessary.

¶ 18. Thus, Compass exercised near complete control over Jacquelyn's daily work activities. While Jacquelyn may have used Case equipment, may have worked at times with Case employees to select menu items for catered events and other cafeteria functions, and may have been periodically subject to Case's inspection, unlike *Gansch, Kaelber,* and *Kopfhamer,* there appears to have been little to no compulsion by Case on Jacquelyn. Case provided few, if any, directions as to what tasks she should be performing, when she should be performing them or how she should be performing them. As such, the control element of Wis. Stat. § 102.01(2)(f) is not satisfied.

### Compensation

¶ 19. Finally, Jacquelyn is also correct in her argument that Case did not directly compensate Compass for her labor and therefore the compensation element is not met. In a footnote, Case briefly argues

that the payment arrangement in this case is similar to the arrangement in *Kopfhamer*, where we upheld the temporary help agency defense. There, however, the special employer expressly contracted for the temporary employee to perform work activities under its own exclusive direction and control and the special employer thereby directly compensated the general employer for the temporary employee's labor. *See Kopfhamer*, 258 Wis. 2d 359, ¶¶ 22–23. Here, on the other hand, as we have explained, the contract between Compass and Case did not permit Case to control how Compass would fulfill its obligations; Compass retained exclusive control over the day-to-day operations of the cafeteria and vending services, including the work activities and payment of its employees. Thus, when Case paid Compass under the contract, it was paying for the end product—the cafeteria and vending services—and not specifically for the labor of the individual employees like Jacquelyn. The compensation element then is not satisfied.

## CONCLUSION

¶ 20.  We conclude that Compass did not place Jacquelyn with Case, Case did not control Jacquelyn's work activities and Case did not compensate Compass for Jacquelyn's labor. Thus, Compass is not a "temporary help agency" under Wis. Stat. § 102.01(2)(f), and Case is not entitled to immunity from tort liability under Wis. Stat. § 102.29(6). We reverse the decision of the circuit court and remand the case for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded.