M. M. Schranz Roofing, Inc.
and Transportation Ins. Co.,
Plaintiffs-Appellants,†

v.

First Choice Temporary, Metlife Ins. Co. of CT,
c/o Travelers Claim Services, Labor and Industry
Review Commission, P. L. Freeman Roofing and
Eddie Crews, Deceased, Defendants-Respondents.

Court of Appeals

*No. 2011AP345. Submitted on briefs September 16, 2011.
—Decided December 21, 2011.*

2012 WI App 9

(Also reported in 809 N.W.2d 880.)

† Petition for Review denied 4/23/12.

420

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *W. Wayne Siesennop, M. Susan Maloney*, and *Scott J. Thomsen of Siesennop & Sullivan* of Milwaukee.

On behalf of the defendants-respondents First Choice Temporary and Metlife Ins. Co. of CT, c/o Travelers Claim Services, the cause was submitted on the brief of *Catherine A. Thomas* of *Chapin & Associates* of Brookfield.

On behalf of the defendant-respondent Labor and Industry Review Commission, the cause was submitted on the brief of *Charlotte Gibson*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Neubauer, P.J., and Reilly, J.

¶ 1. BROWN, C.J. This is a "loaned employee" case under the Worker's Compensation Act. The Labor and Industry Review Commission (LIRC) found that a company in the business of loaning employees was nevertheless not a "temporary help agency" under the facts of the case and thus not liable for worker's compensation to an injured employee. The basis of this finding was that there was no statutory temporary help agency relationship between the employment agency and the employee's worksite employer. The worksite employer objects, basically arguing that the employment agency *did* loan the employee for work at the specific job site, albeit to a nominal employer who, in turn, loaned the employee to the worksite employer. And more to the point, the worksite employer underscores that the employment agency was not only compensated for the employee's work, but also paid worker's compensation insurance premiums for the employee; therefore, the agency should have expected to pay worker's compensation benefits if there was an injury. But we conclude that the worksite employer's "it's only fair" argument (our term) simply runs up against the plain meaning of the statute defining "temporary help agency." The leg-

islature has determined what is "fair" and LIRC simply followed the law. We affirm.

## FACTS

¶ 2. The facts as LIRC found them are as follows. On May 22, 1995, Crews (now deceased) fell from a roof he was working on and became quadriplegic. The question for LIRC was: Who was his employer for worker's compensation purposes? The circumstances of Crews's employment leading up to his accident are complicated. From at least April 3, 1995, to April 29, 1995, Crews was employed by M. M. Schranz Roofing, Inc. and assigned to work at Thoreau School. He had also worked for Schranz on an intermittent basis for "several" years before that. Because Schranz's contract with Milwaukee Public Schools required minority subcontractors to receive a certain percentage of the work, Schranz contacted P. L. Freeman Roofing to satisfy the requirement. Freeman was a one-man show and did not want the responsibility of having his own employees, so he agreed with Schranz that he would arrange to obtain workers from First Choice Temporary, which was in the business of providing temporary help to other businesses. So, presumably because Schranz wanted Crews on the job, Crews was sent to First Choice. First Choice then loaned him to Freeman. Then, unbeknownst to First Choice, Freeman loaned Crews to Schranz. Crews resumed doing roofing work at Thoreau under the supervision of Schranz employees, but Schranz paid Freeman, who took a cut and then paid First Choice. Crews received a paycheck from First Choice. Crews worked for First Choice until the May 22, 1995 workplace accident.

¶ 3. In 1998, Crews filed a civil lawsuit against Schranz, Freeman and their insurers for negligence.

*See Crews v. Freeman Roofing, Inc.*, No. 2000AP423, unpublished slip op. ¶ 1 (WI App Mar. 27, 2001) (*Crews I*). The trial court in that case granted summary judgment to Schranz,[1] which was affirmed by a panel in another district of this court. *Id.* The panel applied the test under *Seaman Bod y Corp. v. Industrial Commission*, 204 Wis. 157, 235 N.W. 433 (1931), and held that Crews was the "loaned employee" of Schranz. *Crews I*, unpublished slip op. ¶ 16. Based on that holding, Crews could not pursue tort remedies against Schranz. *Id.*

¶ 4.   After *Crews I*, First Choice filed a reverse application against Schranz for reimbursement of Crews's worker's compensation payments, arguing that Schranz was responsible for the payments because Crews was the loaned employee of Schranz at the time of the accident. Schranz countered that First Choice, as a temporary help agency, was statutorily liable for Crews's claims. *See* WIS. STAT. § 102.04(2m) (2009–10).[2] Ultimately, LIRC concluded that Schranz was responsible for the payments because First Choice did not fit the statutory definition of a temporary help agency vis à vis Crews's work for Schranz. *First Choice Temp. v. M. M. Schranz Roofing, Inc.*, LIRC Decision, Claim No. 1996–026642 (Mar. 8, 2010); *see also* WIS. STAT. §§ 102.01(2)(f) and 102.04(2m). Schranz filed an application for judicial review, and the trial court affirmed LIRC's decision. This appeal followed.

---

[1] Freeman was subsequently dissolved and did not participate in the proceedings. *Crews v. Freeman Roofing, Inc.*, No. 2000AP423, unpublished slip op. ¶ 3 (WI App Mar. 27, 2001) (*Crews I*).

[2] All references to the Wisconsin Statutes are to the 2009–10 version. We acknowledge that Crews was injured in 1995, but we cite to the 2009–10 volume because the relevant statutes have not changed substantively since then unless otherwise noted.

## DISCUSSION

¶ 5.  To decide whether Schranz may be held liable for Crews's worker's compensation claim, we must resolve two issues. First, Schranz contends that Crews was not its employee for worker's compensation purposes. *See* WIS. STAT. § 102.07(4). Second, Schranz contends that regardless of any employer-employee relationship between it and Crews, First Choice is statutorily liable based on its status as a temporary help agency, placing Crews with another employer at the time of his accident. *See* WIS. STAT. § 102.04(2m).

### *Standard of Review*

¶ 6.  Because this is an appeal following an administrative agency decision, we review LIRC's decision, not the decision of the trial court. *See American Mfrs. Mut. Ins. Co. v. Hernandez*, 2002 WI App 76, ¶ 11, 252 Wis. 2d 155, 642 N.W.2d 584. We will uphold LIRC's findings of fact so long as they are supported by credible and substantial evidence in the record. *Id.* The parties do not argue that the facts found by LIRC are unsupported in the record, so we must apply WIS. STAT. ch. 102 to those facts, which is a question of law.

¶ 7.  When reviewing an agency's conclusions of law, we "apply a sliding scale of deference that is contingent upon the level of [LIRC's] experience, technical competence, and specialized knowledge." *Epic Staff Mgmt., Inc. v. LIRC*, 2003 WI App 143, ¶ 15, 266 Wis. 2d 369, 667 N.W.2d 765 (citation omitted). We have explained the various levels of deference as follows:

> When we afford "great weight" deference to the agency's interpretation, we will sustain a reasonable

agency conclusion even if an alternative conclusion is more reasonable. We give "great weight" deference to the agency's interpretation when all of the following conditions are met: (1) the agency was charged by the legislature with the duty of administering the statute, (2) the interpretation of the agency is one of longstanding, (3) the agency employed its expertise or specialized knowledge in forming the interpretation, and (4) the agency's interpretation will provide uniformity and consistency in the application of the statute.

In affording "due weight" deference to the agency's interpretation, we will not overturn a reasonable agency decision that comports with the purpose of the statute unless we determine that there is a more reasonable interpretation available. We afford "due weight" deference to the agency's determination when it has some experience in an area, but has not developed the expertise that necessarily places it in a better position than a court to make judgments regarding the interpretation of the statute.

When we review an agency decision "de novo," we give no deference to the agency's interpretation. De novo review is appropriate if any of the following is true: (1) the issue before the agency is clearly one of first impression, (2) a legal question is presented and there is no evidence of any special agency expertise or experience, or (3) the agency's position on an issue has been so inconsistent that it provides no real guidance.

*American Mfrs.*, 252 Wis. 2d 155, ¶¶ 12–14 (citations omitted).

¶ 8. Not surprisingly, the parties disagree as to the level of deference that should be given to LIRC's decision in this case. First Choice and LIRC assert that great weight deference is appropriate here, while Schranz asserts that the applicable standard is de novo.

¶ 9. We agree with First Choice that the LIRC decision is entitled to great weight deference on both issues. We note that LIRC has been specifically held entitled to weight and deference on the determination of whether an employee is a "loaned employee," and it has also been held entitled to great weight deference on other WIS. STAT. ch. 102 issues. *See Kaelber Plumbing & Heating v. LIRC*, 160 Wis. 2d 342, 347–48, 465 N.W.2d 829 (Ct. App. 1991); *CBS, Inc. v. LIRC*, 219 Wis. 2d 564, 572–73, 579 N.W.2d 668 (1998). The great weight test is met here for the following reasons. First, LIRC has been charged with administering ch. 102, *see* WIS. STAT. § 102.14(1), and LIRC's interpretation of worker's compensation statutes is longstanding. *See Begel v. LIRC*, 2001 WI App 134, ¶ 8, 246 Wis. 2d 345, 631 N.W.2d 220. In addition, LIRC employed its special knowledge in deciding how ch. 102 should be applied to the unique facts of this case and allowing it to interpret such cases helps to provide uniformity and consistency in the application of ch. 102. *See generally id.*; *CBS*, 219 Wis. 2d at 573.

¶ 10. Schranz argues that great weight deference is not appropriate in this case because "the issue that was before the agency was an issue of first impression." *See American Mfrs.*, 252 Wis. 2d 155, ¶ 14. However, as we have explained in the past, the "issue of first impression" test is not limited to whether the commission has ruled on the exact or substantially similar facts in prior cases. *Telemark Dev., Inc. v. DOR*, 218 Wis. 2d 809, 820, 581 N.W.2d 585 (Ct. App. 1998). Rather the agency's experience in administering a particular statutory scheme is important as well. *Id.* Thus, while LIRC may not have addressed this same, quirky fact situation in the past, it is quite experienced at determining employer liability,

*see Pick 'n Save Roundy's v. LIRC,* 2010 WI App 130, ¶ 15, 329 Wis. 2d 674, 791 N.W.2d 216, so great deference is still appropriate.

■

¶ 11.   We also note that deference is appropriate where, as here, a legal question is "intertwined with factual determinations or with value or policy determinations" and LIRC "has primary responsibility for determination of fact and policy." *Id.* (citation omitted). In this case, LIRC's interpretation of WIS. STAT. ch. 102 is inextricably tied to the unique facts of this case—the details of Crews's complex employment situation at the time of his accident. For all of the foregoing reasons, we give great deference to LIRC's application of ch. 102 in this context.

### Crews as the "Loaned Employee" of Schranz

¶ 12.   As we already stated, *Crews I* based its finding that Schranz was immune from tort liability on Crews's status as a loaned employee of Schranz under the *Seaman* test. *Crews I,* unpublished slip op. ¶ 16. Schranz argues, citing WIS. STAT. § 102.07(4), that Crews does not fit the definition of "employee" for worker's compensation purposes because there was no contract for hire between Crews and Schranz at the time of the accident.

¶ 13.   As Schranz accurately points out, under WIS. STAT. § 102.07(4), nearly every person under a contract for hire is an employee. What Schranz does not acknowledge is that the plain language of § 102.07(4) does not limit the definition of "employee" to those who have a formal contract for hire:

"Employee" as used in this chapter means:

. . . .

**(4)** (a) Every person in the service of another under any contract of hire, *express or implied,* all helpers and assistants of employees, whether paid by the employer or employee, if employed with the knowledge, actual or constructive, of the employer . . . . (Emphasis added.)

Thus, § 102.07(4) contains a broad definition of employee that does not preclude Crews being an employee of Schranz (under an implied contract for hire) at the time of the accident.[3]

█

¶ 14.   In addition to being consistent with Wis. STAT. § 102.07(4), it is also the law of the case that Crews was the loaned employee of Schranz under *Seaman* since that was the core finding in *Crews I*.[4] *See*

---

[3] Again taking language out of context, Schranz contends that *Ryan, Inc. v. Industrial Commission,* 39 Wis. 2d 646, 159 N.W.2d 594 (1968), bars any finding that Crews was an employee of Schranz. It cites to a passage stating that "the first question of all is:   Did he make a contract of hire with the special employer? If this question cannot be answered 'yes,' the investigation is closed." *Id.* at 650–51. This passage is part of the *Ryan* court's explanation of the first element of the *Seaman* test, express *or implied* consent of the employee to work for the special employer. *Ryan,* 39 Wis. 2d at 649–51; *see also Seam an Body Corp. v. Industrial Comm'n,* 204 Wis. 157, 163, 235 N.W. 433 (1931). Nothing in that passage precludes the *Crews I* court's finding that Crews had impliedly consented to work for Schranz at the time of his accident. *See Crews I,* unpublished slip op. ¶ 16.

[4] Schranz contends in its brief that the *Crews I* court explicitly found that Crews was not the employee of Schranz. That argument borders on incomprehensible since *Crews I* based Schranz's immunity from tort liability on the special employer-loaned employee relationship between Schranz and Crews. *Crews I,* unpublished slip op. ¶ 16. Schranz's argument is based on a single sentence taken out of context: "[Crews] knew he was not a Schranz employee and that he was an employee of a

*Crews I*, unpublished slip op. ¶ 16; *State v. Stuart*, 2003 WI 73, ¶ 23, 262 Wis. 2d 620, 664 N.W.2d 82 ("The law of the case doctrine is a 'longstanding rule that a decision on a legal issue by an appellate court establishes the law of the case, which must be followed in all subsequent proceedings in the trial court or on later appeal.' "). So, applying the great weight standard of deference for the agency's determination that Crews was a loaned employee of Schranz for worker's compensation purposes, plus our recognition of the law of the case doctrine, we conclude that the agency's determination was reasonable and will not disturb it.

*First Choice as a "Temporary Help Agency"*

¶ 15.  Having concluded that there was a special employer-loaned employee relationship between Schranz and Crews, we now turn to whether First Choice is nonetheless statutorily liable for Crews's worker's compensation claim because it was acting as a temporary help agency at the time of the accident.

---

temporary help agency." *Id.*, ¶ 15. The very next sentences show what the *Crews I* court was saying. "Thus, [Crews] had no obligation to work for Schranz and he could have easily refused or declined to work there. *Crews's willingness to continue working for Schranz is evidence of his consenting to being loaned by Freeman to Schranz." Id.* (emphasis added). In other words, what the *Crews I* court was explaining in the sentence cited by Schranz was that the first element of the *Seaman* test—consent—was met in this case. *See Seaman*, 204 Wis. at 163. Notice that the panel told how *Freeman* loaned Crews to Schranz. *Crews I*, unpublished slip op. ¶ 15. It said nothing about First Choice loaning Crews to Schranz. So, that determination in no way conflicts with LIRC's decision in this case. First Choice does not dispute the fact that an employer-employee relationship existed between it and Crews at the time of the accident. It only disputes its liability for Crews's worker's compensation claim.

WISCONSIN STAT. § 102.04(2m) makes temporary help agencies, defined in WIS. STAT. § 102.01(2)(f),[5] "liable under [WIS. STAT. §] 102.03 for all compensation and other payments payable under [WIS. STAT. ch. 102]." It further states that "[e]xcept as permitted under [WIS. STAT. §] 102.29, a temporary help agency may not seek or receive reimbursement from another employer for any payments made as a result of that liability." Sec. 102.04(2m). Thus, if First Choice is a "temporary help agency" under § 102.01(2)(f), then it is statutorily liable for Crews's claim.[6]

---

[5] Schranz seems to imply in its brief that WIS. STAT. § 102.04(2m) creates a definition separate from the one in WIS. STAT. § 102.01(2)(f) because it states that "[a] temporary help agency is the employer of an employee whom the temporary help agency has placed with or leased to another employer that compensates the temporary help agency for the employee's services." However, § 102.01(2) explicitly states that the definitions therein, including § 102.01(2)(f), apply to the terms when they are used "[i]n this chapter." Section 102.04(2m) is part of the WIS. STAT. ch. 102 subsection defining "employer." Nothing in § 102.04(2m) indicates an intention to alter the definition of "temporary help agency" for that subsection alone. Although Schranz references an analysis by the Legislative Reference Bureau and other extrinsic sources to support its argument, we do not address them because we think the plain language of §§ 102.01(2)(f) and 102.04(2m) is clear that when the term "temporary help agency" is used in ch. 102, the § 102.01(2)(f) definition applies. *See State ex rel. Kalal v. Circuit Court*, 2004 WI 58, ¶¶ 45–46, 271 Wis. 2d 633, 681 N.W.2d 110 (if a statute's meaning is plain, we do not consult extrinsic sources).

[6] We note that although WIS. STAT. § 102.04(2m) was not in effect until January 1, 1998, nearly three years after Crews's May 1995 accident, it applies to "reimbursement sought or received by a temporary help agency, as defined in [WIS. STAT. § ] 102.01(2)(f) of the statutes, on the effective date of this subsection, notwithstanding that the reimbursement is of a payment

432

¶ 16. Schranz first attempts to place First Choice in the category of a WIS. STAT. § 102.01(2)(f) employer by repeating its argument that the single sentence in *Crews I*—the one that says "[Crews] knew he was not a Schranz employee and that he was an employee of a temporary help agency," *Crews I*, unpublished slip op. ¶ 15—binds us to the view that First Choice was his employer. But for the same reasons we have already stated in footnote 4, that sentence is taken out of context. Moreover, Crew's state of mind at the time has absolutely nothing to do with whether First Choice fit the definition of a § 102.01(2)(f) employer as a matter of applying the undisputed facts to the statute.

¶ 17. Having dispensed with Schranz's misreading of *Crews I* for the second time, we can now turn our attention to the meat of the issue. WISCONSIN STAT. § 102.01(2)(f) defines a "temporary help agency":

> "Temporary help agency" means an employer who places its employee with or leases its employees to another employer who controls the employee's work activities and compensates the first employer for the employee's services, regardless of the duration of the services.

Now, we will break that down in relation to the facts. For First Choice to have met the definition of a temporary help agency so as to be responsible for worker's compensation benefits instead of Schranz, First Choice would have had to "place" Crews *with* Schranz. Schranz would control the employee's work activities *and* compensate First Choice for Crews's services.

---

made before the effective date of this subsection." 1997 Wis. Act 38, § 48(1) & 49. The parties do not dispute that it applies to this case.

433

¶ 18. But what actually happened here? First Choice placed Crews *with Freeman*. Freeman, in turn, compensated First Choice. So, as LIRC found, First Choice was not a temporary help agency according to WIS. STAT. § 102.01(2)(f) because First Choice "did not place Crews with Schranz or lease him to Schranz." Rather, it was "Freeman [who] loaned Crews to Schranz."[7] Under these simple and undisputed facts, First Choice was not a temporary help agency that placed Crews with Schranz and the statute is inapplicable.

¶ 19. The long and the short of it is that Schranz did not obtain Crews's services through the auspices of First Choice. First Choice did not place Crews with or lease Crews to "another employer who controls the employee's work activities and compensates the first employer for the employee's services." Rather, in order to satisfy minority hiring requirements, Crews was placed with Freeman,[8] who then placed Crews with Schranz. Sure, this was a sleight of hand between

---

[7] LIRC also found that even though Freeman loaned Crews to Schranz, Freeman was not a temporary help agency or leasing employer as contemplated by WIS. STAT. § 102.01(2)(f) because Freeman "never entered into an employment contract with Crews." Schranz does not now argue that Freeman was a temporary help agency liable for the claim, so we do not address that issue.

[8] In its reply brief, Schranz takes issue with any assertion that Schranz had to go through Freeman instead of First Choice because of Freeman's status as a minority subcontractor. It asserts that First Choice was a minority agency. LIRC found that Schranz went through Freeman to fulfill its minority requirements. Whether Schranz went through Freeman because he was a minority contractor or for other reasons is simply not relevant to our analysis.

Schranz and Freeman. Had there been evidence that First Choice knew all along that it was really just a player in order to make everything legal and that it knew it was placing Crews with the real party in control of the employee, Schranz, this would be a closer case. LIRC emphasized that First Choice did not even have knowledge that Crews was working for Schranz. This is a very important finding of fact and drives the result in this case. Indeed, without that fact, we surmise that LIRC may well have reached a different result. And that finding of fact is conclusive on us. *See American Mfrs.*, 252 Wis. 2d 155, ¶ 11.

¶ 20. Sure, First Choice was compensated for placing Crews and First Choice used part of that compensation to pay worker's compensation premiums for Crews. And sure—generally speaking, a temporary help agency that places an employee and gets compensated for it should run the risk of having to pay worker's compensation if its employee gets injured on the job. *See* WIS. STAT. § 102.04(2m). But the worker's compensation act *also* requires that the employee is placed by that agency to the employer who will supervise that work. *See* § 102.01(2)(f). We think that this is because the legislature wanted temporary help agencies to be able to depend upon and trust the second employer, who would be the entity actually in control of its employee. This did not occur here, and the statute is not applicable under the facts of this case. That is what LIRC held. Using the great deference standard—in fact, using *any* standard, we affirm LIRC's decision.[9]

---

[9] We point out that LIRC's interpretation of WIS. STAT. § 102.01(2)(f) is consistent with our case law, as well. As we have explained in other cases, a temporary help agency under § 102.01(2)(f) has the following characteristics: "(1) an employer who places its employee with a second employer, (2) the

¶ 21.   Schranz relies heavily on a Department of Workforce Development (DWD) commentary footnote to Wis. Stat. § 102.01(2)(f). DWD footnote 3 to § 102.01(2)(f) states:

> Leasing agencies that lease employees to other employers would be responsible for worker's compensation benefits in the same way that temporary help agencies are. An employee continues to be the employee of the original employer, though that employee may have been loaned or leased to another employer, if the original employer continues to retain at least some rights or obligations of the original employment contract such as payment of wages or the power to terminate the employee. This corrects the situation that can occur when employees leased to another employer are injured during the leasing period and the employers litigate who is responsible for the benefits while the employee waits for his or her compensation. This clarification also eliminates the double collection of premiums by insurance carriers on the wages of the employee from both the leasing agency and the employer to whom the employee is leased.

Schranz argues that because First Choice retained the right to terminate Crews and the obligation to pay Crews's wages, it remained Crews's employer for the

second employer controls the employee's work activities, and (3) the second employer compensates the first employer for the employee's services." *Peronto v. Case Corp.*, 2005 WI App 32, ¶ 9, 278 Wis. 2d 800, 693 N.W.2d 133 (citing § 102.01(2)(f) and *Kaelber Plumbing & Heating v. LIRC*, 160 Wis. 2d 342, 351–52, 465 N.W.2d 829 (Ct. App. 1991)). Employers must fit all three characteristics in order to be a "temporary help agency" under the statute. Here, First Choice did not place Crews with a second employer who controlled Crews's work activities, and Schranz did not compensate First Choice for Crews's work—so the chain required by § 102.01(2)(f) was broken.

purpose of determining worker's compensation liability. LIRC counters that the footnote does not and could not eliminate the need to fulfill the statutory requirements. We agree. DWD cannot change the plain meaning of the legislature's words in a footnote. We also note that nothing in the footnote indicates DWD's contemplation of a scenario like this one where the loaning employer does not know that its employee has been reassigned to an unknown worksite employer.

*Laches, Waiver, and Estoppel*

¶ 22. Finally, Schranz argues that the equitable doctrines of laches, waiver, and estoppel bar First Choice's reverse application. It acknowledges, however, that it did not raise these issues to LIRC. Nonetheless, Schranz urges us to use our "general equity powers" to address the issues and find in its favor. We decline to do so.

¶ 23. Generally speaking, "an appellate court will not consider issues beyond those properly raised before the administrative agency, and a failure to raise an issue generally constitutes a waiver of the right to raise the issue before a reviewing court." *State v. Outagamie Cnty. Bd. of Adjustment*, 2001 WI 78, ¶ 55, 244 Wis. 2d 613, 628 N.W.2d 376. Of course, there are exceptions, and we may, in some cases, choose to address issues not properly raised to the agency. *See, e.g., id.*, ¶ 56. But we will not do so here. As LIRC points out in its brief, if Schranz had made those arguments at the administrative level, First Choice could have developed legal arguments and factual evidence relevant to the claims and then LIRC could have decided how to apply those

437

doctrines in the worker's compensation setting. We will not now decide those issues without the benefit of a well-developed record.[10] Schranz's equitable arguments are waived.

## CONCLUSION

¶ 24.  Because Crews was a loaned employee of Schranz at the time of the accident, and because First Choice was not his temporary help agency employer according to WIS. STAT. § 102.01(2)(f), we uphold LIRC's finding that Schranz must reimburse First Choice for the worker's compensation claim payments it made to Crews.

*By the Court.*—Order affirmed.

---

[10] Because of that, we need not address First Choice's argument that equitable remedies are unavailable in WIS. STAT. ch. 102 proceedings.